Ravi Batra, Esq. #4299
The Law Firm of Ravi Batra, P.C.
Attorneys for plaintiff
The Batra Building
142 Lexington Avenue
NEW YORK, N.Y. 10016
212-545-1993; fax 212-545-1993

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

---

**GINA ANNE NOEL PANE,**
                    *Plaintiff*,

- against -

**THE TOWN OF GREENBURGH,
JOHN KAPICA, in his capacity as
CHIEF OF THE GREENBURGH
NEW YORK POLICE
DEPARTMENT,  ERIK WARD,
POLICE OFFICER MICHAEL
MUESSER, SERGEANT ROBERT
GRAMAGLIA, SERGEANT
FRANCIS PUMILLO, DETECTIVE
FERTIG, JOHN DOE POLICE
OFFICERS 1 - 10, SO NAMED AS
THEIR IDENTITIES HAVE YET TO
BE ESTABLISHED.**
                    *Defendants*.

---

Civil Action Number: _____
07 CV 3216 (WP-4)(C.M.J. Smith)
    Filed 4/20/07

**VERIFIED COMPLAINT**

**COMPLAINT DEMANDS DAMAGES,
INJUNCTIVE  RELIEF, AND A JURY
TRIAL**

## I.    PRELIMINARY STATEMENT

1.      This is a civil rights action brought to vindicate the plaintiff's rights under

the United States Constitution, the laws of the United States, and the laws of the State of

New York.

2.      Gina Pane is a woman who at the time of the incident described herein was a full time college student striving to attain a career in the financial services industry. Since the incident, the plaintiff has completed her college studies, graduated with academic honors, and has been emotionally scarred and financially ruined by her inability to attain employment in her chosen field, as a result of the actions of the personal and municipal defendants.

3.      By this action, plaintiff seeks to restore public confidence in all police officers, who carry a badge of honor and are, and must remain, role models in society as well as to compel the defendants to faithfully comply with federal and state laws and constitutions and afford equal protection of the law, irrespective of a citizen's gender, status and profession, and to be compelled to institute new protocols, under the supervision of a federal monitor, to assure that the Town of Greenburgh's Police Department carries out it vital function of maintaining law and order in a civil society without itself committing illegal acts that serve to shame and debase the "badge," including, but not limited to, targeting a female for sexual gratification by getting rid of her male passenger, falsely arresting plaintiff, issuing a false "Fred Flintstone" criminal summons, Information # LV 417646 for "DWI-drugs," for "driving" while the car was legally parked and the engine turned off in the parking lot of the Greenburgh Multiplex Cinema, and then offering to drop the illegal and falsely inflated criminal charges in exchange for plaintiff's cooperation to gratify the sexual urges of many in general, and the disgusting kinky sexual fetish of Erik Ward in particular.

2

4.      Plaintiff, Gina Pane, a 2006 graduate of Manhattanville College, with Honors, seeks compensatory and punitive damages for pain and suffering, lost wages and benefits, deprivation of a career on Wall Street caused by one or more persons unrelated to plaintiff, who called Local News 12 and Jonathan Bandler of The Journal News on February 2, 2006 in an attempt to cause damage and effectuated witness-intimidation of plaintiff as she, without her then-sole counsel, Tony Castro, present, had already filed on January 27, 2006 with the Greenburgh Police Department and with the Office of the District Attorney of Westchester County for the alleged illegal acts of professional misconduct charges against the police officers at the arrest site as well as those present at Police Department's headquarters the night of January 21, 2006 and against Erik Ward for his misconduct on January 21st and 22nd. The media blaze and frenzy was lit by the Evening Edition of Local News 12 with its airing of the Story starting with the 10:00pm broadcast on February 2, 2006, and the Journal News' piece appeared on February 3, 2006. The private and painful misconduct of the defendants visited upon plaintiff exploded exponentially by the story going "public," thereby exacerbating and magnifying the injury to plaintiff, and destroyed her career of choice, finance, on "Wall Street."

5.      By this action, plaintiff seeks money damages for lost wages and benefits, liquidated, compensatory, and punitive damages, and injunctive and declaratory relief, including orders requiring that the state record of plaintiff's arrest on January 21, 2006 be expunged and, *inter alia*, the Greenburgh Police Department be enjoined to disband the Street Crimes Unit, and to take action to modify its practices and policies so as not to

3

violate federal and state law and cause the deprivation of constitutional protections afforded to the citizens of these United States and of New York. The amount sought for punitive damages, $2,000,000, in its entirety is irrevocably assigned by Gina Anne Noel Pane and her counsel on April 20, 2006, a year ago, as follows: 75% to the "widows and orphans" fund maintained by the Police Benevolent Association for each of the villages, towns and cities in Westchester to share proportionately; and 25% of such amount to be donated to the fund in honor of hero-cop, Michael Frey.

## II.   **JURISDICTION**

6.      This action is brought pursuant to 42 U.S.C.1983, the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and other laws of the United States and the State of New York.

7.      This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. 1331, 1343.

8.      This Court has supplemental jurisdiction over the related state claims pursuant to  28 U.S.C.1367.

9.       Venue is proper pursuant to 28 U.S.C.1391(b) in that the plaintiff resides within the Southern District of New York, and the events complained of herein occurred within the Southern District of New York.

10.      Jurisdiction to grant declaratory judgment is conferred by 28 U.S.C. 2201, 2202. An award of costs and attorneys fees is authorized pursuant to 42 U.S.C. 1988.

## III.    PARTIES

11.    Plaintiff Gina Pane is a citizen of the United States of America, residing at 64 Doral Greens Drive, Rye Brook, New York.  As a resident of Westchester County the plaintiff resides within the Southern District of New York.

12.     Defendant Town of Greenburgh is a municipal corporation within the State of New York.

13.    Defendant Town of Greenburgh operates the Greenburgh Police Department and is located entirely within the Southern District of New York.

14.    Defendant Erik Ward was, at the time the events leading to this cause of action occurred, a Police Officer employed by and working under the authority of defendant Town of Greenburgh.  Erik Ward is sued in his official and individual capacities.

15.    Defendant John Kapica is the Chief of the Greenburgh Police Department and is sued in that official capacity.

16.    Police Officer Michael Muesser was at the time the events leading to this cause of action occurred, a Police Officer employed by and working under the authority of defendant Town of Greenburgh.  Muesser is sued in his official and individual capacities.

17.    Sergeant Robert Gramaglia was at the time the events leading to this cause of action occurred, a Police Officer employed by and working under the authority of defendant Town of Greenburgh.  Gramaglia is sued in his official and individual

5

capacities.

18.    Sergeant Francis Pumillo was at the time the events leading to this cause of action occurred, a Police Officer employed by and working under the authority of defendant Town of Greenburgh.  Pumillo is sued in his official and individual capacities.

19.    Detective Fertig was at the time the events leading to this cause of action occurred, a Police Officer employed by and working under the authority of defendant Town of Greenburgh.  Fertig is sued in his official and individual capacities.

20.    Defendants Greenburgh Police Officers John Does 1 - 10 are unidentified Police Officers employed by and working under the authority of defendant Town of Greenburgh, who, while on duty and on their job posts, participated in the false arrest, unlawful detention, and mistreatment of the plaintiff.  Greenburgh Police Officers John Does 1 - 10 are sued in their official and individual capacities.

## IV.    AMOUNT IN CONTROVERSY

21.    The amount in controversy exceeds $1,000,000.00, exclusive of interest and costs.

## V.    JURY DEMAND

22.    The plaintiff demands a trial by jury on each and every one of her claims.

## VI.    NOTICE OF CLAIM TO MUNICIPAL DEFENDANTS

23.    On or about April 20, 2006, the plaintiff timely served a Notice of Claim upon the municipal defendants pursuant to New York General Municipal Law §

6

50-e.  A true copy of this notice is appended hereto as Exhibit 1, and its contents are incorporated herein.

24.     On or about April 12, 2007, the municipal defendants conducted an Examination of Claim of the plaintiff under oath pursuant to New York General Municipal Law §  50-h.

25.     The municipal defendants are therefore on notice of the facts and circumstances alleged herein, and have been afforded ample opportunity to investigate the plaintiff's claims.  More than thirty days has passed since the filing of the notice of claim and the claim has not been adjusted.

## VII.   FACTUAL ALLEGATIONS

26.     On or about January 21, 2006, at approximately 9:15 P.M., the plaintiff, while accompanied by a physically challenged male friend, was lawfully present within a parking lot of a privately owned movie theater complex at 320 Saw Mill River Road, Greenburgh, New York.  The plaintiff, and her friend, had each previously purchased tickets for an motion picture that was scheduled to start shortly thereafter.

27.     As Ms. Pane and her friend sat in Ms. Pane's car,[1] which was parked head-on towards a perimeter wall, with its engine off, within the private parking facility of the movie theater Ms. Pane and her friend possessed tickets to, and were thereby licensed to be present, the plaintiff noticed what appeared to be red turret lights in her rear view

---

[1]This motor vehicle was titled to Ms. Pane's mother; however, Ms. Pane was authorized to possess and use the vehicle and maintained exclusive access to it.

mirror.  Shortly thereafter, the plaintiff's car was approached by Police Officer Michael

Muesser and Sergeant Robert Gramaglia, each police officers employed by the Police

Department operated and exclusively controlled by the Town of Greenburgh, and on duty.

28.    The Greenburgh police personnel parked one of their police vehicles behind

Ms. Pane's, such that movement of her vehicle was blocked.  Accordingly, Ms. Pane was

not free to leave the parking facility she was lawfully present within, and should have had

the lawful authority to exit.

29.    Muesser and Gramagla, without probable cause, or even reasonable

suspicion, approached Ms. Pane's car, that was parked and not then operational, and

without provision of any warnings pursuant to Miranda v. Arizona, or its progeny,

demanded to know if anything illegal was contained therein. Ms. Pane, initially

responded by identifying herself to these officers as a college student, provided them with

identification, including that provided by her college, and further provided the officers

with the tickets she possessed for the upcoming movie showing.  Nevertheless, frightened

by the imposing circumstances of being completely surrounded, with police officers at the

sides of her vehicle, and a police car at the rear, eventually provided the demanding

officers a small quantity of marijuana that was in her purse.

30.    The police officers then directed Ms. Pane to exit her vehicle and physically

restrained her with handcuffs and detained her within a Greenburgh police vehicle.

31.    Without permission or authority, and with no reasonable perception of

threat to their physical safety, the police officers began to search through Gina Pane's

8

belongings which were sealed within closed containers within her car.   As a result of questions posed by these police officers, Ms. Pane acknowledged the presence of play piercing needles within one of the sealed containers.  In response to this, the officers inquired if Ms. Pane was a "dominatrix," a part-time, lawful vocation, to which Ms. Pane admitted engaging.

32.    Shortly thereafter, at the behest of Greenburgh police personnel, defendant Erik Ward, then an on-duty Greenburgh Police Officer, accompanied by Detective Fertig, arrived at the movie theater parking lot and began to speak with Ms. Pane.  Defendant Ward advised Ms. Pane, in substance, that his police colleagues knew him to be "into" "sadomasochism" and "scat,"[2] and that as a result he was called to the scene. While speaking with Ms. Pane, defendant Ward advised her, in substance, that he enjoyed causing women distress while he attained sexual gratification for himself.[3]

33.    Defendant Ward then offered Ms. Pane, an illegal and dishonorable *quid pro quo*, to wit: a legitimate request to provide defendant Ward with information about any drug dealers **and** the illicit request that Ms. Pane assist defendant Ward in achieving deviant sexual gratification, in exchange for favorable treatment of charges resulting from her police contact and faster release time from the Police Headquarters.

34.    Ms. Pane was subsequently directed by all police personnel at the scene,

---

[2]Upon information and belief "scat" is a slang term for attaining sexual pleasure through excretion of human feces (coprophilia, coprolagnia, fecophilia, fecalphilia) .

[3]More specifically, in substance defendant Ward told Ms. Pane that he had previously fucked a woman in the mouth so hard that it made her vomit."

including defendant Ward, to be cooperative and to amuse sergeant at the station house.

35.     Ms. Pane was transported by Muesser, in a Greenburgh Police Department vehicle, to the Greenburgh Police Department Station House, at188 Tarrytown Road, Greenburgh, New York, a building maintained by and for the benefit of the Greenburgh Police Department and the Town of Greenburgh.  During the course of the trip from the movie theater to police headquarters Muesser informed Ms. Pane that he attained sexual pleasure from "spanking."

36.     Upon arriving at Greenburgh police headquarters Ms. Pane was approached by Sergeant Francis Pumillo who made sexual innuendos to her.  Notably, Pumillo commented, in substance, that Ms. Pane must not be used to being the one in handcuffs. This comment was clearly suggestive of fetish based sex play involving the voluntary wearing of handcuffs.  The sergeant went further, asking Ms. Pane if she was "wearing a 'strap-on' or do we have to strip search you?"[4]

37.     Ms. Pane was taken through the Greenburgh police prisoner holding and processing facility within police headquarters, wherein she was moved to various cells by different officers, and repeatedly subjected to additional comments about sexual proclivities.

38.     Defendant Ward approached Ms. Pane in the holding cells and while she

---

[4]"Strap-on" is believed to reference a "dildo", which is a device resembling a human penis in shape, size, and overall appearance, connected to a harness, that can be worn by a person to penetrate a sexual partner vaginally, anally or orally.

was handcuffed within a holding cell, defendant Ward repeated his improper proposal that Ms. Pane provide defendant Ward with information about drug dealers **and** assist defendant Ward in achieving deviant sexual gratification, in exchange for favorable treatment of charges resulting from her police contact and faster release time from the Police Headquarters.   In furtherance of this proposal, defendant Ward sought Ms. Pane's cellular telephone number as part of her "cooperation" with him.

39.    Believing that defendant Ward could in fact cause expeditious processing and release from custody, and subsequent dismissal of criminal charges about to be levied against her, Ms. Pane complied with defendant Ward's request, and provided him with her cellular telephone number.  At or about this time, defendant Ward again repeated his story about causing women distress while he attained sexual gratification for himself and reiterated his interest in "scat."

40.    While detained in the police processing area, Ms. Pane was taken to a fingerprinting room, wherein John Doe Police Officers #1 (slight in height and had what appeared to be a "beer belly") and # 2 (taller with very short brown hair) subjected her to further sexual improprieties, specifically asking her about "spanking" and "medical role play." John Doe Officer #1 then informed Ms. Pane that he enjoyed being spanked and John Doe Officer #2 agreed that John Doe Officer #1 did indeed like being spanked. Thereafter, John Doe Officer # 1demanded that Ms. Pane spank him, which order she complied with.

41.    At some point that evening, John Doe Officer # 3  (with reddish hair)

11

entered the room while Ms. Pane was detained and took various Polaroid pictures of

various parts of Ms. Pane's body - without her consent - and without her ability to protest.

John Doe Officer # 3 then left briefly and returned at which time he used his cellular

telephone's camera to video record Ms. Pane whilst she was in a holding cell.

42.    John Doe Officer # 3 then handed the photographs to various John Doe

Greenburgh police officers, who each inquired of Ms. Pane to identify her internet

website address and her "dominatrix-name."  Upon information and belief, John Doe

Officer # 3's actions with the photographs reveal that these images were not taken or

disseminated as part of the arrest processing procedures.

43.    Sergeant Pumillo, then interrupted the misconduct - not for disciplinary or

security purposes, but instead to warn his subordinates and colleagues that there were

security video cameras in operation which could capture their wrongdoing.  Thereafter,

Pumillo instructed Ms. Pane to embarrass an African-American Police Officer named

"Colby" by pretending "Colby"was her "spanking-client."   Ms. Pane complied with

Pumillo's demand, to the embarrassment of "Colby," and in the presence of many

officers.

44.    Although Ms. Pane was not operating a motor vehicle while approached by

the police, she was subjected to a demeaning, improper, and unjust demand: either

provide a sample of urine or blood, or face suspension of her driving privileges.

Notwithstanding that Ms. Pane was not driving a car, under duress of the inability to

continue her college studies without the transportation afforded by a car, she complied

with the demand and urinated for the police. Only after compliance was Ms. Pane

provided with her *Miranda* rights.

45.    Prior to being released from Greenburgh police headquarters, Ms. Pane

asked Muesser if defendant Ward could indeed help her with dropping her charges.

Muesser said "yes," and gave Ms. Pane a Greenburgh Police Department business card

containing defendant Ward's name and a telephone number.

46.    Ms. Pane was issued two criminal charges: Information # LV 417646 for

"DWI-drugs" and Appearance Ticket #W511529 for "criminal possession marijuana."

47.    The "DWI-drugs" charge was rapidly dismissed by prosecutors with the

Westchester County District Attorney's Office on March 16, 2006, citing "insufficient

grounds."[5]  Upon information and belief, this dismissal was based upon the facts that Ms.

Pane was not driving and did not even have her engine on while parked - and therefore

under New York law was not "operating" a motor vehicle.

48.    The marijuana possession charge was resolved on or about February 21,

2007, by entry of an Adjournment in Contemplation of Dismissal,[6] five days after

[5]N.Y. C.P.L. § 160.50(3) provides, in pertinent part, that

a criminal action or proceeding against a person shall be considered terminated
in favor of such person where:

(b) an order to dismiss the entire accusatory instrument against such person
. . . was entered or deemed entered, or an order terminating the prosecution
against such person was entered . . . and the people have not appealed from
such order or the determination of an appeal or appeals by the people from
such order has been against the people . . .

[6] N.Y. C.P.L. § 170.55(2) provides, in pertinent part, that

defendant Ward was fired by the Town of Greenburgh.

49.     Ms. Pane was unjustly arrested, wrongly detained, and falsely imprisoned for approximately three hours.  During that time she was traumatized, humiliated, and dominated by police personnel acting under color of law in a unprofessional manner that evinces a criminal disregard for their civil and constitutional obligations owed to Ms. Pane.

50.     Within hours of being released on Sunday, January 22, 2006, at approximately 2:30 AM, Ms. Pane was called by defendant Ward on her cellular telephone and informed that he wanted to meet for coffee later that day.   Ms. Pane agreed to subsequently make arrangements to meet.

52.     On January 22, 2006, at approximately 1:15 PM, defendant Ward called

---

[a]n adjournment in contemplation of dismissal is an adjournment of the action without date ordered with a view to ultimate dismissal of the accusatory instrument in furtherance of justice. . . Upon application of the people, made at  any  time  not  more  than  six  months . . .after the issuance of such order,  the court  may  restore the case  to the calendar upon a determination  that  dismissal of the accusatory instrument would not be in furtherance of justice, and the action must thereupon proceed.  If the case is not so restored within such six months . . . the accusatory instrument  is, at the expiration of such period, deemed to have been dismissed by the court in furtherance of justice.

N.Y. C.P.L. § 170.55(8) provides that

[t]he granting of an adjournment in contemplation of dismissal shall not be deemed to be a conviction or an admission of guilt. No person shall suffer any disability or forfeiture as a result of such an order.  Upon the dismissal of the accusatory instrument pursuant to this section, the arrest and prosecution shall be deemed a nullity and the defendant  shall  be restored, in contemplation of law, to the status he occupied before his arrest and prosecution.

Ms. Pane and left a message on her cellular telephone voice mail.  After a series of phone calls, defendant Ward arranged to meet Ms. Pane on the grounds of the Doral Arrowwood resort in Rye Brook, New York.

53.     Defendant Ward arrived as scheduled, driving a four wheel drive "Jeep" type motor vehicle.  Upon Ward's arrival, the exterior of the vehicle was clean, and Ms. Pane entered it - believing she was taking steps to "cooperate" with the police, in order to help herself.

54.     Upon information and belief, defendant Ward did not request permission from his superiors to engage in informant type discussions with Ms. Pane, although required to do so by Procedure 405.07 of the regulations of the Greenburgh Police Department.

55.     Upon Ms. Pane's entry into the vehicle, a conversation ensued wherein defendant Ward instructed Ms. Pane to first discuss information she possessed about a narcotics dealer.  Ward emphasized that the reason he wanted to first focus on the drugs was because once he became embroiled in discussing his sexual fetishes, he would not be able to deviate from that discussion.

56.     In substance, defendant Ward directed Ms. Pane to call a person she believed to be involved in the sale of cocaine, and arrange to purchase a set dollar amount of the narcotic.  Defendant Ward assured Ms. Pane that steps would be taken to ensure her safety - and to prevent the purported drug dealer from learning of her involvement in his arrest.   Thereafter, in defendant Ward's presence, and at his insistence, Ms. Pane left

a message for this person to call her back.  This message was never responded to.

57.    After making this call, Ms. Pane was then again subjected to defendant Ward's story involving oral sex and vomit.  Defendant Ward suggested that Ms. Pane accompany him to a motel in Bronx County that he used for fetish play because it was away from people in Greenburgh who knew him and were not aware of his proclivities. Specifically, defendant Ward asked that Ms. Pane go with him in order that she could defecate on him, or in his presence.

58.    While in defendant Ward's vehicle, and later, Ward displayed unique parts of his body to Ms. Pane.  Notably, he revealed that he shaved the hair from most of his body, and that he had a unique pattern of pubic hair as a result of his shaving, such that his pubic hair resembled Adolph Hitler's moustache.

59.    Ms. Pane refused to go to Bronx County; however, she suggested a secluded woodsy area nearer to where they already were.  Ms. Pane then directed defendant Ward as he drove to the entrance of the woods, at which time Ward engaged the four wheel drive function of his vehicle and drove them into the woods.

60.    As Ms. Pane exited the vehicle, defendant Ward advised her that he did not have any implements to wipe away any defecation.  In that light, Ward's initial request that Ms. Pane defecate on him was substituted by the alternative of her defecating while he watched.

61.    As Ms. Pane defecated on the ground in the woods, defendant Ward proceeded to masturbate until such time as he ejaculated on the feces excreted by Ms.

16

Pane.  Defendant Ward then proceeded to smell Ms. Pane's anus and buttocks.

62.     Ms. Pane then used items of nature recovered from within the woods in order to wipe herself clean.  At that time, defendant Ward began to repeatedly demand that Ms. Pane never disclose to anyone what had occurred.  Ms. Pane agreed to defendant Ward's demands, at which time they each returned to Ward's vehicle and proceeded back to the resort parking lot.  Upon returning, the exterior of the vehicle was now, in part, covered with mud, evidencing Ward's foray into the forest with Ms. Pane.

63.     Ms. Pane met with defendant Ward, accompanied him to the woods, and complied with his fetish based demands, because she believed she had little to no choice because of defendant Ward's status as a Greenburgh police officer, her concerns for her future, and her knowledge that other members of the Greenburgh police force were willing to put forth false charging information (i.e. falsely alleging she was operating a motor vehicle).

64.     As defendant Ward met Ms. Pane during his duties as a Greenburgh police officer, and used his apparent authority as a police officer to compel her cooperation, and subsequent conversations, meeting and fetish based actions, he was acting at all times under color of law.

65.     While defendant Ward attempted to contact Ms. Pane by telephone the next day, she intentionally avoided his call.  Realizing that something was truly awry, Ms. Pane eventually retained the services of an attorney and reported the wrongdoing on the part of defendant Ward, and the other police personnel to supervisory staff at the

Greenburgh police department, internal investigative staff at the Greenburgh police department, and the Westchester County District Attorney's Office.

66.     On or about January 27, 2006, at the direction of Lieutenant Vincent LoGiudice of the Greenburgh Police Department's internal investigative unit, a search of the wooded area referred to above, wherein Ms. Pane defecated at the direction of defendant Ward, was conducted.  At that time, police personnel recovered feces where Ms. Pane directed them.

67.     Upon information and belief, laboratory analysis conducted by a laboratory contracted by the Westchester County District Attorney confirmed that the recovered material was, in fact, feces.

68.     Soil was recovered from the wooded area referred to above, and from defendant Ward's automobile, and forwarded to the Federal Bureau of Investigation (FBI) for analysis.  Upon information and belief, the FBI laboratory concluded that portions of soil recovered from defendant Ward's vehicle were "indistinguishable in color, texture, and mineralogy" to soil recovered from the wooded area.

69.     Upon information and belief, during the internal investigation a search warrant was obtained authorizing police personnel to search defendant Ward's residence and to seize, *inter alia*, his computer.

70.     Upon information and belief, sources within the Greenburgh police department unlawfully informed defendant Ward about the search warrant prior to its execution.  As a result, defendant Ward had an opportunity to dispose of the computer

and any evidence of his fetishes contained therein.  Notably, upon information and belief, the computer defendant Ward owned had been recently purchased by him, and he subsequently asserted that he disposed of it because it had "viruses."

71.    Upon information and belief feces excreted from a human being with a healthy colon does not contain DNA. Moreover, while human semen does contain DNA, upon information and belief, the exposure of semen to the harsh bacteria contained in human feces is destructive to the DNA present.  Moreover, exposure to the elements, such as those contained in the wooded area described above, is also damaging to DNA that could be within semen.

72.    Upon information and belief, defendant Ward has concocted his versions of events to be somewhat consistent with the scientific evidence.  Most crucially, it was not until the laboratory revealed that DNA could not be obtained from the samples obtained in the woods that defendant Ward issued any sort of denial of Ms. Pane's claims.  If he in fact had not masturbated in the woods and ejaculated on Ms. Pane's feces, he simply could have, and should have said so immediately.  That he did do it is the only reasonable explanation for awaiting laboratory results.[7]  Ward was justifiably fired from his position of trust and honor, having debased both, on February 16, 2007 by the municipal defendants for violating their protocol.

73.    While Ms. Pane was involved in part time business as a "dominatrix," her

---

[7]Although the plaintiff acknowledges that Ward, like any other American, has the right to remain silent, he declined to exercise that right by falsely denying the claims at the times that he did.

activities were discreet and unknown to her family.  While she maintained an internet website which advertised her services, her true name was not mentioned, nor was her address.  In fact, it was, and remains Ms. Pane's belief that her website would only be found and accessed by people actively involved in the fetish of "domination."  As such, she believed that her part time involvement in the fetish world would never be disclosed to anyone outside of the universe of people practicing the fetish - whom she further believed tended to be discreet in discussions of their behaviors.

74.    Upon information and belief, on or about February 2, 2006, an unknown source contacted Jonathan Bandler, a reporter at *The Journal News* by telephone and told the reporter about the arrest of the "dominatrix."   Similarly, Local News12 TV received one or more anonymous calls on February 2, 2006, causing that TV station to run a story on the "dominatrix" on February 2, 2006.  This was more than a week since Ms. Pane's police contact and thus devoid of any valid claim of newsworthiness, yet a media frenzy focusing on Ms. Pane began. Coverage by major television and radio stations soon followed, causing Gina to literally run out of fear from the camera as captured by News12,  fear for the destruction of a future career on Wall Street, as well as contemplate not going forward with her complaint against the officers who acted illegally and dishonorably.  Upon information and belief, these media reports were designed as witness-intimidation and resulted in aggravating the injury to Gina Pane.

75.    As a result of the above misconduct, Gina has received medical care and treatment, including hospital emergency room treatment, and has been taking

medication, including, propranolol 10mg (aka Inderal), Lorazepam 1mg (aka Ativan), and *inter alia*, Lexapro 10mg, an antidepressant.

76.     As a result of the misconduct, and the mass dissemination of information about Ms. Pane, including revelations of the false and unconstitutionally based criminal charges against Ms. Pane, Ms. Pane's secrets have been exposed, and her reputation irreparably damaged. This is evidenced by her inability to obtain a job in the financial services industry, despite an honors degree in economics.

77.     Upon information and belief, Ms. Pane has sought employment, gained interviews on the basis of her resume, and then upon the completion of background checks which reveal that she was involved in fetish behavior, and significantly that criminal charges were filed against her - notwithstanding their ultimate resolution - she is denied employment she is otherwise well qualified for.

78.     The defendants' violated the plaintiff's rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and the laws of the state of New York. As a result of the defendants' unconstitutional and unlawful actions, the plaintiff has suffered severe emotional distress and damage to her reputation. She seeks a declaration that the defendants violated her rights and an award of damages and attorney's fees.

## VIII.    COUNTS PURSUANT TO 42 U.S.C. 1983

### FIRST COUNT
### (U.S. Const. 4th Amend.)

79.     The plaintiff repeats, reiterates, and realleges each and every allegation

stated in the preceding paragraphs as if set forth in full herein.

80.    In arresting, searching and detaining the plaintiff without sufficient cause, the defendant police officers engaged in unreasonable searches and seizures in violation of the Fourth Amendment to the United States Constitution.

81.    Municipal liability for these violations of the Fourth Amendment is based upon the individual officers in this case acting in a manner consistent with the policy, custom, and usage of the Greenburgh Police Department.

82.    Moreover, municipal liability for these violations of the Fourth Amendment is further based upon the failure of the Greenburgh Police Department to train, supervise and discipline, amounting to deliberate indifference to the constitutional rights of plaintiff where, as here, municipal officials are aware that their law enforcement officials will generally encounter individuals and to detain or arrest these individuals; that such encounters present law enforcement personnel with unique scenarios and difficult choices that proper training, supervision, and discipline would make easier; and that the wrong decision by police officers will frequently cause the deprivation of constitutional rights.

83.    Importantly, this failure to supervise is clearly demonstrated by the facts herein as supervisors were involved in the tortious conduct towards the plaintiff.

### SECOND COUNT
### (U.S. Const. 14th Amend.)

84.    The plaintiff repeats, reiterates, and  reallages each and every allegation stated in the preceding paragraphs as if set forth in full herein.

85.    In restraining the plaintiff in handcuffs, and in cells, absent a

constitutionally proper basis, while mocking her, the defendant officers deprived the plaintiff of her liberty without due process of law in violation of the Fourteenth Amendment of the United States Constitution.

86.    Municipal liability for these violations of the Fourteenth Amendment is based upon the individual officers in this case acting in a manner consistent with the policy, custom, and usage of the Greenburgh Police Department.

87.    Moreover, municipal liability for these violations of the Fourth Amendment is further based upon the failure of the Greenburgh Police Department to train, supervise and discipline, amounting to deliberate indifference to the constitutional rights of plaintiff where, as here, municipal officials are aware that their law enforcement officials will generally encounter individuals and to detain or arrest these individuals; that such encounters present law enforcement personnel with unique scenarios and difficult choices that proper training, supervision, and discipline would make easier; and that the wrong decision by police officers will frequently cause the deprivation of constitutional rights.

88.    Importantly, this failure to supervise is clearly demonstrated by the facts herein as supervisors were involved in the tortious conduct towards the plaintiff.

**THIRD COUNT**
**(U.S. Const. 14th Amend.)**
**(Equal Protection)**

89.    The plaintiff repeats, reiterates, and  reallages each and every allegation stated in the preceding paragraphs as if set forth in full herein.

90.    In participating in a pattern of harassment against the plaintiff based

upon her status as a woman, while she detained and restrained in the custody of the

defendants, without any liberty or freedom of movement, and thereby required to be

subjected to the demeaning and denigrating sex based speech, comments, and actions of

the defendants collectively, the defendant officers deprived the plaintiff of Equal

Protection of law in violation of the Fourteenth Amendment of the United States

Constitution.

91.    Municipal liability for these violations of the Fourteenth Amendment is

based upon the individual officers in this case acting in a manner consistent with the

policy, custom, and usage of the Greenburgh Police Department.

92.    Moreover, municipal liability for these violations of the Fourth Amendment

is further based upon the failure of the Greenburgh Police Department to train, supervise

and discipline, amounting to deliberate indifference to the constitutional rights of plaintiff

where, as here, municipal officials are aware that their law enforcement officials will

generally encounter individuals and to detain or arrest these individuals; that such

encounters present law enforcement personnel with unique scenarios and difficult choices

that proper training, supervision, and discipline would make easier; and that the wrong

decision by police officers will frequently cause the deprivation of constitutional rights.

93.    Importantly, this failure to supervise is clearly demonstrated by the facts

herein as supervisors were involved in the tortious conduct towards the plaintiff.

### FOURTH COUNT
### (U.S. Const. 5th Amend.)

94.    The plaintiff repeats, reiterates, and  reallages each and every allegation

24

stated in the preceding paragraphs as if set forth in full herein.

95.    Municipal liability for these violations of the Fifth Amendment is based upon the individual officers in this case acting in a manner consistent with the policy, custom, and usage of the Greenburgh Police Department.

96.    Moreover, municipal liability for these violations of the Fifth Amendment is further based upon the failure of the Greenburgh Police Department to train, supervise and discipline, amounting to deliberate indifference to the constitutional rights of plaintiff where, as here, municipal officials are aware that their law enforcement officials will generally encounter individuals and to detain or arrest these individuals; that such encounters present law enforcement personnel with unique scenarios and difficult choices that proper training, supervision, and discipline would make easier; and that the wrong decision by police officers will frequently cause the deprivation of constitutional rights.

97.    Importantly, this failure to supervise is clearly demonstrated by the facts herein as supervisors were involved in the tortious conduct towards the plaintiff.

## IX.    STATE LAW BASED COUNTS

### FIFTH COUNT
### (FALSE ARREST)

98.    The plaintiff repeats, reiterates, and  reallages each and every allegation stated in the preceding paragraphs as if set forth in full herein.

99.    As a result of the actions of the municipal and individual defendants, the plaintiff was confined against her will.

25

100.    The plaintiff was continuously aware that she was not free to go.

101.    The defendants were without privilege to confine the plaintiff.

102.    The defendants had no probable cause to stop, arrest, detain, or otherwise confine the plaintiff.

103.    The defendants did not have a warrant to arrest or detain the plaintiff.

104.    The municipal defendants are liable to the plaintiff under the doctrine of *respondeat superior*.

## SIXTH COUNT
## (FALSE IMPRISONMENT)

105.    The plaintiff repeats, reiterates, and realleges each and every allegation stated in the preceding paragraphs as if set forth in full herein.

106.    As a result of the actions of the municipal and individual defendants, the plaintiff was confined against her will.

107.    The plaintiff was continuously aware that she was not free to go.

108.    The defendants were without privilege to confine the plaintiff.

109.    The defendants had no probable cause to stop, arrest, detain, or otherwise confine the plaintiff.

110.    The defendants did not have a warrant to arrest or detain the plaintiff.

111.    The municipal defendants are liable to the plaintiff under the doctrine of *respondeat superior*.

## SEVENTH COUNT
## (MALICIOUS PROSECUTION)

112.    The plaintiff repeats, reiterates, and  realleges each and every allegation stated in the preceding paragraphs as if set forth in full herein.

113.    As a result of the actions of the municipal and individual defendants, criminal proceedings were commenced against the plaintiff.

114.    These proceedings were terminated in favor of the plaintiff.

115.    There was no probable cause to arrest the plaintiff.

116.    The defendants' collectively brought these charges against the plaintiff with actual malice to the plaintiff.

117.    The municipal defendants are liable to the plaintiff under the doctrine of *respondeat superior*.

## EIGHTH COUNT
## (New York Civil Rights Law §40-c)
## (DISCRIMINATION)

118.    The plaintiff repeats, reiterates, and  realleges each and every allegation stated in the preceding paragraphs as if set forth in full herein.

119.    As a result of the actions of the municipal and individual defendants, the plaintiff was denied Equal Protection of the laws of the state of New York.

120.    As a result of the actions of the municipal and individual defendants, the plaintiff was treated differently while being detained against her will, and thereby discriminated against because she was a woman.

121.    The municipal defendants are a subdivision of the state of New York.

122.    The individual defendants were all acting as agents of a municipal

subdivision of the state of New York.

## NINTH COUNT
### (BATTERY)

123.    The plaintiff repeats, reiterates, and  reallages each and every allegation

stated in the preceding paragraphs as if set forth in full herein.

124.    As a result of the actions of the municipal and individual defendants,

the plaintiff was confined against her will.

125.    In order to detain and restrain the plaintiff, the individual defendants

touched her with their hands.

126.    In order to detain and restrain the plaintiff, the individual defendants placed

the defendant in handcuffs.

127.    The defendants were without privilege to confine the plaintiff.

128.    The defendants had no probable cause to stop, arrest, detain, or otherwise

confine the plaintiff.

129.    The defendants did not have a warrant to arrest or detain the plaintiff.

130.    The arrest of the plaintiff was unlawful.

131.    The contact by the defendants was offensive to the plaintiff.

132.    The defendants did not have the plaintiff's consent to make contact with

her.

133.    The municipal defendants are liable to the plaintiff under the doctrine of

*respondeat superior*.

## TENTH COUNT

**(INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)**

134.    The plaintiff repeats, reiterates, and  reallages each and every allegation stated in the preceding paragraphs as if set forth in full herein.

135.    The behavior of the individual and municipal defendants as described herein was extreme and outrageous.

136.   The individual and municipal defendants intended to cause the plaintiff severe emotional distress

137.    The individual and municipal defendants did cause the plaintiff severe emotional distress.


**X.    PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment granting for each of the counts the following:

A. injunctive relief that changes the protocol in the Town of Greenburgh's Police Department, including, but not limited to, improving the operation of the Police Department of the Town of Greenburgh, the appointment of a court monitor for a reasonable period of time so as to effectuate a change in Greenburgh police culture to respect the law and reject rogue cops, such as Erik Ward, so that the necessary public confidence is restored and respect for police officers everywhere is enhanced;

B.  a fair and reasonable amount of $5,000,000 that will properly compensate plaintiff  for her pain and suffering, lost wages and pension benefits, including, all health

29

care benefits, and the loss of a high-paying career in finance on "Wall Street";

C. a fair and reasonable amount of $2,000,000 as and for punitive damages, which

in its entirety, Gina Anne Noel Pane and her counsel irrevocably assigned on April 20,

2006: 75% to the "widows and orphans" fund maintained by the Police Benevolent

Association for each of the villages, towns and cities in Westchester to share

proportionately; and 25% of such amount to be donated to the fund in honor of hero-cop,

Michael Frey;

D.  attorneys fees as and for prosecuting the instant case as well as defending

plaintiff against Greenburgh's illegal and fraudulently inflated criminal charges leveled

against plaintiff, along with all additional relief as may appear just and proper to the

Court.

Dated: New York, New York
       April 20, 2007

                              Respectfully,
                              **THE LAW FIRM OF RAVI BATRA, P.C.**
                              *Counsel for Plaintiff*
                              /s/
                              Ravi Batra, Esq. (RB 4299)
                              Todd B.  Sherman, Esq.
                              (Not admitted in the Southern District of New York)
                              The Batra Building
                              142 Lexington Avenue
                              New York, NY 10016
                              (212) 545-1993


check #9272 $350
\pane.696\panecomplaint1983

EXHIBIT "1" TO THE COMPLAINT: 4/20/06 NOTICE OF CLAIM (hard copy

includes exhibits "1" and "2" of the Notice of Claim)

IN THE MATTER OF THE CLAIM(S) OF
**GINA ANNE NOEL PANE,**
        *Claimant,*
    -vs-
The Town of Greenburgh, and
Greenburgh's Police Department, in
County of Westchester, New York.
        *Respondents.*

**NOTICE OF CLAIM**

TO:    Clerk, Town of Greenburgh
       177 Hillside Avenue (1st Floor)
       Greenburgh, NY 10607

Copy: Office of the Town Attorney
       177 Hillside Avenue
       Greenburgh, NY 10607
       914-993-1546; Fax 914-993-1656

       PLEASE TAKE NOTICE that this Notice of Claim, and its horrific and greater-detail is *caused* by Officer Erik Ward's attorney, Andrew Quinn's attempt on 4/13/06 and the interview he gave Channel 12 to wrongfully denigrate and further injure Gina Pane in a lame attempt to help his client, Erik Ward, who is lost in the depth of vile-gratification while possessing a badge, instead of plea-bargaining the charge of "official misconduct" levied against Officer Ward by the Hon. District Attorney Janet DiFiore after a thorough investigation by serious minded professionals who came to the considered judgment that they could prove their case against Erik Ward beyond a reasonable doubt *and* save society the detail-based pain of the collective misconduct complained of herein; annexed hereto as Exhibit "1" is the March 23, 2006 Press Release issued by the Hon. Janet DiFiore, District Attorney, Westchester County;

       PLEASE TAKE NOTICE that a claim and demand is hereby made, under Federal and State law with full reservation of right to file an action in federal court, for:
       (1) injunctive relief that changes the protocol at Greenburgh's Police Department, including, but not limited to:
           (a) insuring that a Badge remains a badge of honor, and that police officers remain role models for society, who are held in the highest esteem given the very dangerous job they perform to keep the public safe and have repeatedly made the ultimate sacrifice;
           (b) disbanding the Street Crimes Unit as it has the propensity to breach the Constitutional protections afforded all citizens by inter alia, acting preemptively and wrongfully in the absence of necessary probable cause and implicating *Mapp v. Ohio,* causing illegally obtained evidence to be suppressed;
           ( c) instituting a new and improved manner of hiring and retention of police officers and their supervisors, such that those who have a history *or* propensity for engaging in deviant sexual activity under *color of law* in violation of inter alia,  §1983, be identified and denied hiring, and if already hired to be provided appropriate remedial retraining while placed

upon "internal probation" no shorter than 1 year, and thereby reducing, if not eliminating, the burden on taxpayers for having to pay damages and attorneys' fees to a prevailing claimant whose constitutional rights were violated by government and its employees and agents who dishonored their badge of honor;

( d) instituting a new and improved protocol that to prevent probable sexual predators from serving on the police force, by inter alia, recording which officer visited what web site from their official police computer, and flagging any sexual or deviant web sites visited by said officer for internal affairs' automatic review, excepting any legal website visit with a form duly executed by the "site-visiting" officer with supervisor-approval either before such usage or within a reasonable time after an emergency website-visit for an identified police investigation;

(2) reasonable damages, compensatory and punitive, are hereby demanded as follows: $2,000,0000 as and for compensatory, with an additional amount as and for punitive, along with attorneys' fees for the prevailing claimant/plaintiff.

NAME AND POST OFFICE ADDRESS OF CLAIMANT:
Gina Anne Noel Pane, an honor-student recently nominated by her college to be included in the 2006 edition of *Who's Who Among Students in American Universities and Colleges,* resides at 64 Doral Greens Drive West, Rye Brook, NY 10573.

NAME AND POST OFFICE ADDRESS OF ATTORNEYS FOR CLAIMANT:
The Law Firm of Ravi Batra, P.C.
The Batra Building
142 Lexington Avenue
New York, NY 10016
212-545-1993

NATURE OF THE CLAIM:
Claim is hereby made for the constitutional and tortious injuries inflicted upon Gina, including, psychological and witness-intimidation (a la obstruction of justice), as a result of the events that started on 1/21/06 at approximately 9:15pm in the parking lot of the Greenburgh Multiplex Cinemas, located at 320 Saw Mill River Road, Greenburgh, NY, including, but not limited to, in summary fashion, a *per se* violation of §1983, false arrest, false imprisonment, and inter alia sexual harassment, starting with inter alia:

1. the arrival of a marked cruiser, with its lights on but without a siren, in the absence of probable cause and parking in the rear of claimant's parked vehicle, whose engine was off and the front windows were down, and two occupants.

2. it continued with Officer #1 and Officer #2 approaching the claimant's car and without reading them their *Miranda* rights illegally inquired of Gina and her friend, who had tickets to see a movie at 9:20pm;

3. Gina was asked by Officer #2 to put her hands behind her back, and he handcuffed her; at about the same time, Police Officer #1 got rid of the male friend and told him to leave;

4. it continued with Officer #1, over objection, opening one of two zipped bags, a brown "Thirteen" bag, and upon seeing its contents of medical equipment, such as a blood pressure kit and a stethoscope, all obtained from a medical supply house, due to the officer's

peculiar *advance* knowledge either of Gina Pane or of S&M, or both, upon being told that there were needles in the "carry-on" zipped bag disclosed his knowledge of S&M and inquired if she was a "dominatrix" when no reasonable person with the information then available would so ask or so conclude;

5. upon information and belief, Officer #1 and/or Officer #2 at the scene, without legal cause, informed P.O. Erik Ward, via police radio or possibly, a cell phone, who then rushed across town to meet Gina at the arrest site;

6. Erik Ward disclosed that the other officers knew he was "into" "sadomasochism" and "scat" as the reason he was called, and inter alia, discussed his proclivity to cause severe distress to his girlfriends while he gratified himself and offered Gina, an illegal and dishonorable "*quid pro quo,*" to help his need for deviant sexual gratification in exchange for favorable treatment of the criminal charges, including dismissal, and faster release time from the Police Headquarters, which Gina agreed-to in a situation that legally obviates such duress-based consent; in addition, Erik Ward also expressed his desire to get a drug dealer;

7. all three officers, #1, #2 and Erik Ward told Gina to be cooperative and to make the duty-Sergeant laugh at the station house;

8. Officer #2 drove Gina to the Station house, located on 188 Tarrytown Road, White Plains, while orally engaging in unprofessional behavior, and telling Gina a story, while she was crying;

9. upon arrival at police headquarters' parking lot, Officer #3 greeted Gina and made unprofessional inquiries of her for his humor-based sexual gratification;

10. Gina was taken to a holding cell, where there already was a male being held, and through out this process, was subjected to additional distress by the officers, including Officer #2;

11. Gina was moved from one cell to another and back, and Erik Ward in the station house told Gina that he will get her out fast, as he promised, within 1 and ½ hours; he asked for her cell phone number, which she provided as part of her "cooperation," to permit him to call her as he wanted to do after she was released; he also informed her again of his love for "scat," which is vile, deviant, horrific, and upon information and belief, has elements of non-consensual violence and makes "domination," role-playing seem almost "normal" by comparison;

12. later, while Gina was handcuffed to the bench in a holding cell, she asked (arresting) Officer #2 if Erik Ward could indeed help her with dropping her charges, and Officer #2 said "yes," and gave Gina a Greenburgh Police card with Erik Ward's name and number on it; annexed hereto as Exhibit "3;"

13.sometime after Gina gave her urine sample, she was read her *Miranda* rights;

14. sometime later, Gina was taken to the fingerprint room, and Officer #4 (short, beer-belly) and Officer #5 (taller, very short brown hair) who asked Gina about "spanking" and "medical role play," respectively; Officer #4 admitted he liked to be spanked, and Officer #5 agreed that Officer #4 did indeed like being spanked;

15. later, Officer #6 came in (with red hair) and looked at Gina "as if I was a ham sandwich and he was going to eat me," and upon his return back to the room came back with a Polaroid camera and took various pictures of Gina and her various parts of the body without consent from Gina; He came back yet again and used his cell phone's camera to video record Gina in the cell; the Polaroids were handed out to different police officers who asked Gina for her then-web address and her dominatrix-name;

16. Officer #4 asked Gina to spank him, which order Gina complied with; he asked Gina to do so again harder, and again, Gina complied with the instruction of Officer #4;

17. Officer #3 (the one who had received Gina in the parking lot) came and interrupted the misconduct by warning his subordinate police officers that there were security video cameras in operation and to "knock it off;" only to then instruct Gina to embarrass an African-American police Officer named "Colby" and act as if he was her "spanking-client," and later brought Colby, and in the presence of many officers, Gina, as instructed, acted out Colby's "embarrassment," to the hysterical delight of all, even though Gina knew it was wrong to do so;

18. Gina was arrested and falsely imprisoned for approximately 3 hours, and traumatized, humiliated, and dominated by persons acting under color of law in a unprofessional manner and conduct the evinces a criminal disregard for their civil and constitutional obligations owed to Gina;

19. Gina had been issued two criminal charges: Information # LV 417646 for "DWI-drugs" and Appearance Ticket #W511529 for "criminal possession marijuana;" the "DWI-drugs" charge was dropped on March 16, 2006 by the DA's Office citing "insufficient grounds," as Gina was not driving and did not even have her engine on while parked; the drug possession charge continues, and awaits an evidentiary hearing on inter alia, the lack of probable cause which would mandate that the drugs be suppressed as a continuing burden imposed upon society, particularly law enforcement, not to break the law while acting with a badge;          annexed hereto as Exhibit " 2;"

20. Gina, within hours of being released on Sunday, January 22, 2006, was called by Erik Ward on her cell and was told that he would pick her up later that day; he picked up Gina in his clean Jeep, acting under color of law and with implicit and obvious duress, and after a trip into the woods, with DNA evidence of his sexual gratification left behind in the woods, Police Officer Erik Ward dropped off Gina;

21. The charges, DWI and criminal possession marijuana, were not disposed off by Erik Ward as he promised in his unlawful *quid pro quo*, and Gina feeling even more abused filed misconduct charges on 1/27/06 with the District Attorney's Office; and inter alia

22. **witness-intimidation; obstruction of justice; taking a private painful event and making it public and magnifying the injury to Gina Pane:** on or about February 2, 2006, a person known to Jonathan Bandler, a reporter for *The Journal News*, called him to tell him about the "dominatrix" and thereby started the witness-intimidation and aggravating the injury to Gina Pane; similarly, News12 TV received one or more anonymous calls on February 2, 2006, causing that TV station to run a story on the "dominatrix," and the media fire was lit, with coverage by major TV and radio stations soon to follow, causing Gina to literally run out of fear from the camera as captured by News12,  fear for the destruction of a future career on Wall Street, as well as contemplate not going forward with her complaint against the officers who acted dishonorably; annexed hereto as Exhibit "4" are print-outs of News12's 2/2/06 story and Jonathan Bandler's 2/3/06 story in *The Journal News* based upon the 2/2/06 contact each of the media outlets received; and *the media fire was lit*;

23. as a result of the above misconduct, Gina has been received medical care and treatment, including hospital emergency room treatment, and has been taking medication, including, propranolol 10mg (aka Inderal), Lorazepam 1mg (aka Ativan), and inter alia, Lexapro 10mg, an antidepressant.

The above injuries were proximately caused by the intentional, negligent and tortious conduct of inter alia:

     1. The Police Department of the Town of Greenburgh;

     2. The Town of Greenburgh's defective protocol in hiring, training and retaining police officers, which defects became apparent in the situation presented by the facts starting on January 21, 2006 a la Gina Pane;

     3. uniformed Officer #1 (maybe 5'7" male, dark hair, white, slender, athletic build);

     4. uniformed Officer #2 (maybe 5'8" male, brownish hair, slighter-build than Officer #1, and a little taller);

     5. Erik Ward;

     6. Officer #3, the commanding officer the night of 1/21/06 at the Station house (short, maybe 5'5" male, black balding hair "comb over," and obviously excited);

     7. Officer #4, (maybe 5'9" male, dark hair with grey, broad chest, beer belly);

     8. Officer #5 (maybe 6'1" male, slender, darkish hair, plain clothes);

     9. Officer #6 (maybe 6' male, slender with red short hair);

     10-20: John and Jane Does, intended to be fictitious names of persons who participated or facilitated the misconduct starting with the evening of January 21, 2006, as well as the misguided person or persons who attempted to intimidate Gina Pane by calling the media on February 2, 2006, after Gina had filed a report of professional misconduct of the very private and painful matter.

TIME WHEN THE CLAIM AROSE: started with the evening of 1/21/06, and continued till Erik Ward's 1/22/06 post-release visit but under color of law, and then post-1/27/06 complaint the 2/2/06 witness-intimidation.

PLACE WHERE THE CLAIM AROSE: In addition to the above, starting with the unlawful taking of Gina into the custody of the Police officers of the Town of Greenburgh.

MANNER IN WHICH THE CLAIM AROSE: See above. It included the "Fred Flintstone" ticket issued to Gina Pane for DWI, when she was in a parked car with the engine off. *The conduct complained of herein is an affront to the dignity of the overwhelming number of role-model police officers everywhere, who despite great job-stress and job-danger serve to keep the public safe with dignity and honor while lawfully acting under color of law.*

In addition to the above, the exact manner of how this claim occurred, in the event it is controverted despite DNA and video-tape evidence, will be determined by the fact finder after appropriate discovery.

ITEMS OF DAMAGE OR INJURIES SUSTAINED SO FAR AS NOW PRACTICABLE:

     physical and inter alia, severe emotional injuries, including subsequent proximately needed hospitalization and medical treatment, and colossal loss of privacy for Gina and, despite being a straight-A student a diminution of her chosen career path on Wall Street and the prospect of being "mocked," "humiliated," "blackmailed," "shunned," and inter alia, "ostracized" *in futuro*.

RELIEF and AMOUNT DEMANDED:

A. injunctive relief that changes the protocol in the Town of Greenburgh, including, but not limited to, improving the operation of the Police Department of the Town of Greenburgh, including a court-appointed monitor for a set period of time, so as to restore public confidence and respect for police officers;

B. fair and reasonable amount that will properly compensate the claimant for her pain and suffering, lost wages and pension benefits, all health care expenses; approximately $2,000,000.00; a fair and reasonable amount as and for punitive damages, which in its entirety, Gina Anne Noel Pane and her counsel irrevocably assigns as follows: 75% to the "widows and orphans" fund maintained by the Police Benevolent Association for each of the villages, towns and cities in Westchester to share proportionately; and 25% of such amount to be donated to the fund in honor of hero-cop, Michael Frey.

DATED: April 20, 2006

(with enclosures)

_____

Gina Anne Noel Pane


## VERIFICATION

STATE OF NEW YORK)

County of Westchester)  ss:

Gina Anne Noel Pane, being duly sworn, deposes and says that the deponent is a Plaintiff/CLAIMANT in the within Notice of Claim. Deponent has read the foregoing Notice of Claim and knows the contents thereof; that the same, as applicable, and while a synopsis, is a true sum and substance to deponent's knowledge, except as to matters therein stated to be alleged upon information and belief and that as to those matters, deponents believe it to be true.

_____

Gina Anne Noel Pane


Sworn to before me this 20th day of April, 2006


_____

Notary Public

\pane.696\042006NoticeofClaim

Docket No.

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

---

### GINA ANNE NOEL PANE,
*Plaintiff*,

- against -

### THE TOWN OF GREENBURGH,
**JOHN KAPICA, in his capacity as CHIEF OF THE GREENBURGH NEW YORK POLICE DEPARTMENT,  ERIK WARD, POLICE OFFICER MICHAEL MUESSER, SERGEANT ROBERT GRAMAGLIA, SERGEANT FRANCIS PUMILLO, DETECTIVE FERTIG, JOHN DOE POLICE OFFICERS 1 - 10, SO NAMED AS THEIR IDENTITIES HAVE YET TO BE ESTABLISHED.**
*Defendants.*

SUMMONS and COMPLAINT

THE LAW FIRM OF RAVI BATRA, P.C.
*Counsel for plaintiff Pane*
The Batra Building
142 Lexington Avenue
New York, NY 10016
(212)545-1993