UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
GINA ANNE NOEL PANE,

                Plaintiff

   -against-

THE TOWN OF GREENBURGH, JOHN KAPCIA, in his capacity as Chief of the Greenburgh Police Department, ERIK WARD, POLICE OFFICER MICHAEL MUESSER, SERGEANT ROBERT GRAMAGLIA, SERGEANT FRANCIS PUMILLO, DETECTIVE PAUL FERTIG, JOHN DOE POLICE OFFICERS 1-10 so named as their identifies have yet to be established,

                Defendants.
------------------------------------------------------------------------X

Case No.: 07 CV 3216
(WP4) (CMS)

## MEMORANDUM OF LAW

THOMAS J. TROETTI, ESQ.
Attorney for Defendants,
POLICE OFFICER MICHAEL MUESSER, SERGEANT ROBERT GRAMAGLIA, SERGEANT FRANCIS PUMILLO, DETECTIVE PAUL FERTIG, JOHN DOE POLICE OFFICERS 1-10 so named as their identities have yet to be established
Office & P.O. Address
305 Old Tarrytown Road
White Plains, New York 10603
(914) 946-1875

## POINT I

**THE COURT SHOULD GRANT LEAVE TO THE MOVING DEFENDANTS TO TAKE THE NON-PARTY WITNESS DEPOSITION OF ANTONIO CASTRO, ESQ, ON THE BASIS THAT THE SUBJECT MATTER OF HIS TESTIMONY WILL RELATE TO NON-PRIVILEGED INFORMATION WHICH IS RELEVANT TO THE DEFENSE OF THE CLAIMS ASSERTED BY THE PLAINTIFF**

In accordance with the Federal Rules of Civil Procedure, a party may discover any non-privileged information "that is relevant to the claim or defense of any party" *Fed. R. Civ. P.* 26(b)(1). For such information to be relevant it "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence" *Id.* Relevant evidence is that which "[has] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" *Fed. R. Evidence* 401. A court should interpret the standard of relevance "broadly" *see In re Flag Telecom Holdings, Ltd. Sec. Litig*, 236 F.R.D. 177, 183 (S.D. N.Y. 2006) (citing cases), in determining whether the requested discovery "encompasses any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case" *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

Information protected by the attorney-client privilege applies where (1) legal advice of any kind is sought, (2) from an (attorney) acting in his/her capacity as such (3) covering communications relating to that purpose (4) made in confidence without the presence of any strangers (5) by the client (6) and the privilege has been claimed and (7) not waived *Drimmer v. Apleton*, 628 F. Supp. 1249, 1251 (S.D.N.Y. 1986); *Quintel Corp., N.V. v. Citibank, N.A.*,

1

567 F. Supp. 1357, 1360 (S.D..N.Y. 1983); *Untied States v. United Shoe Machinery Corp.*, 89 F. Supp. 357, 358 (D. Mass 1950). The burden is on the party asserting the privilege to establish each of the requisite elements *See von Bulow v. von Bulow*, 811 F. 2d 136, 144 (2d Cir. 1987); *United States v. Rivera*, 837 F. Supp. 565, 567 (S.D.N.Y. 1993). It must also be demonstrated that the information sought to be disclosed was "a confidential communication made to the attorney for the purpose of obtaining legal advise or services" *Madanes v. Madanes*, 199 F.R.D. 135, 138 (S.D.N.Y. 2001) *citing Matter of Jacqueline F.*, 47 N.Y. 2d 215, 219; *People ex rel Vogelstein v. Warden of County Jail of County of N.Y.*, 150 Misc. 714, 717-718; 8 *Wigmore*, section 2292.   Thus, the attorney-client privilege protects confidential communications by a client to his/her attorney for the purpose of obtaining a legal opinion or legal services and the legal advise or service is rendered in confidence by the attorney *In re Kaplan*, 110 F.R.D. 161, 163 (S.D.N.Y. 1986) *see Fischcer v. United States*, 425 U.S. 391, 403 (1976). The privilege attaches only to the communication between the attorney and the client, not to the underlying facts or information *See United States v. Cunningham*, 672 F. 2d 1064 , 1073 n. 8 (2d Cir. 1982) *cert. denied* 466 U.S. 951 (1984).

Here, the gravaman of the plaintiff's claim for money damages is that the public revelation of her prior profession as a dominatrix destroyed her ability to secure a high paying career in finance and damaged her reputation. She seeks to hold the defendants responsible for having initially revealed, and thereafter publicly disseminated, the information that she was a dominatrix. Yet, it clearly appears that it was the plaintiff who engaged in a media campaign - orchestrated by Mr. Castro - which had the effect of feeding the frenzied appetite of both the print and television media for more information about "the dominatrix."

2

According to the invoice of Tony Castro, Esq. as early as February 3, 2006, and on several other dates thereafter, he met with the media *See* Exhibit "E." He was quoted a day earlier in a February 2, 2006 Cable 12 News TV broadcast *See* Exhibit "B." On March 15, 2006 he participated in a Cable 12 News TV video taping which was later broadcast on Westchester County cable television [1] *See* Exhibit "E." If indeed Mr. Castro, as the plaintiff's legal representative, was responsible for having revealed to "the rest of the world" that his client was a dominatrix the defendants ought not to be held responsible for having made available for later access by prospective employers a profession of hers which so influenced their decision not to hire her that she become "unemployable" on "Wall Street." As a result, Mr. Castro is in a position to provide relevant testimony about whether he contributed to the "mass dissemination" of the very information which his client now claims "irreparably damaged her reputation" and which allegedly to her detriment later become readily available to prospective employers. Furthermore, irrespective of whether Mr. Castro "lit the media fire" by initially disclosing to the media that his client was a dominatrix, it appears he might well have damaged her reputation and dimmed her job prospects by adding the accelerant which caused a burning ember of information to erupt into a raging media conflagration.

Thus, Mr. Castro has relevant evidence on the issue of whether he was responsible, at least in part, for the broad dissemination of the very information which Ms. Pane now claims damaged her reputation and "spooked" prospective employers from offering her this lucrative job in finance which awaited her *See Fed. R. Civ. P*. 40; *In re Flag Telecom*, *supra*, 236 F.R.D. at 183 (discovery encompasses any relevant evidence which bears on any issue in the case or could lead to other factual information which bears on any issue)

---

[1] In 2000 and, again, in 2004 Mr. Castro was a candidate for Westchester County District Attorney.

3

A limited deposition of Antonio Castro, Esq. to explore the nature and the extent of the information he imparted to the media will not encroach upon any confidential communications protected by the attorney-client privilege. The plaintiff's profession as a dominatrix was not a "confidential communication by a client to her attorney," but rather was information of the 'underlying fact" which Ms. Pane had already disclosed to the Greenburgh Police Department *See Cunningham, supra*, 672 F. 2d at 1073 n. 8. Furthermore, the plaintiff waived any attorney-client privilege with respect to those communications when she and Mr. Castro disclosed such information to the media *See* Exhibits "C" and "D." The defendants should be permitted to explore at a deposition of Mr. Castro the extent of the non-privileged information he imparted to the media, the dates he spoke with any media representatives, the means he utilized to transmit that information as well as the other underlying circumstances surrounding his public dissemination of his client's biographical background

Given that the plaintiff seeks "an award of attorney's fees" incurred by her in defense of the criminal charges, the Court should also permit a deposition of Mr. Castro so that the defendants may ascertain if Ms. Pane paid any part of his invoice for legal services rendered, and if so, whether such charges were reasonable and necessary. It is well established that "absent special circumstances, disclosure of "…fee information stand on a footing different from communications intended by a client to explain a problem to a lawyer in order to obtain legal advise" *In re Shargel*, 742 F. 2d 61 (2d Cir. 1984); *Colton v. United States*, 306 F. 2d 633, 637-38 (2d Cir. 1962) *cert denied* 371 U.S. 951 (1963); *Untied States v. Pape*, 144 F. 2d 778, 782 (2d Cir. 1944) *cert denied* 323 U.S. 752 (1944). In re *Shargel*, the United States Attorney's Office sought in a grand jury proceeding the disclosure of fees paid to an attorney

4

by "other clients or by other persons." The Second Circuit held that under *Pape, supra,* the attorney client privilege "does not protect the identity of a 'benefactor' so far as legal fees are concerned." Similarly, in *Application of Doe*, 464 F. Supp. 757 (S.D.N.Y. 1979) it was held that "the fact of a retainer ... the conditions of employment and the amount of the fee do not come within the privilege of the attorney-client relationship" *citing In re Semel*, 411 F. 2d 195, 197 (3d Cir) *cert denied* 396 U.S. 905 (1969); *Colton v. United States*, 306 F. 2d 633, 638 (2d Cir. Cir) *cert denied* 371 U.S. 951 (1962) (tax lawyer was required to answer questions about the amount of legal fees paid by certain named taxpayers because such information was separate and apart from the substance of any information relevant by client to attorney); *See also Priest v. Hennessy*, 51 N.Y. 2d 62, 70 (communications about fee arrangements have no direct relevance to legal advise sought nor does the payment of fees by a third party create a sufficient relationship with such party to claim the attorney-client privilege).

  Perusal of Mr. Castro's invoice for legal services rendered reveals multiple entries reflecting the imposition of fees for work performed arguably unrelated to a defense of the criminal charges. For instance, there are charges for "legal services performed" described as "[m]eetings with [m]edia" (2 hr.), "[c]onf with ... Ravi Batra" (2 hr.), "[m]eeting w/ News 12, taping in my [o]ffice" (2 hr.), "News 12 taping" (2 hr.) and "[p]ress conf. at Fed Court" (2 hr.). Just a cursory examination of Mr. Castro's invoice appears to reveal that ten (10) hours of his time was devoted to "media" meetings, tapings and conferences at a rate of $300 an hour, amounting to total charges approaching almost 30 % of his bill. There is also a handwritten notation on the second page of the invoice (dated August 18, 2006) which

5

appears to be a subsequent reduction of the number of hours billed from 34 to 20, amounting to a reconstituted fee for legal services rendered of $6,000.00. [2]

The plaintiff is only permitted to pursue a claim at trial to recover for the reasonable amount of legal fees incurred by her (not paid by her parents or anyone else) necessarily related to her defense of the criminal charges for which she was arrested. The invoice of Mr. Castro raises more questions about the nature and extent of the plaintiff's claim for attorney's fees than it even comes close to clarifying. As a result, at any deposition of Antonio Castro, Esq. the defendants should be permitted to inquire about "the conditions of [his] employment" and the amount of his fees which she has paid, or he will seek to have her pay, relating to his defense of the criminal charges *See In re Semel*, 411 F. 2d 195, 197 (3d Cir) *cert denied* 396 U.S. 905 (1969); *Colton v. United States*, 306 F. 2d 633, 638 (2d Cir. Cir) *cert denied* 371 U.S. 951 (1962).

DATED: White Plains, New York
January 22, 2008

_____
THOMAS J. TROETTI, Esq. (7481)
Attorney for Defendants, Police Officer
Michael Muesser, Sergeant Robert
Gramaglia, Sergeant Francis Pumillo,
Detective Paul Fertig and others
305 Old Tarrytown Road
White Plains, New York 10603

---

[2] The total amount of checks issued to "Tony Castro" by Eugene Pane and Adele Pane (the plaintiff's parents) is $6,000.00 *See* Exhibit E. The last check was issued on "1-22-07" implying that perhaps Mr. Castro agreed to accept payment in full in the amount of $6,000.00, in satisfaction of the initial amount billed of $10,200.00. .

6