AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

SOUTHERN                    DISTRICT OF                    NEW YORK

GINA PANE

V.

THE TOWN OF GREENBURGH, et. al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  07 CV 3216 (WP4) (LMS)

TO:
Jonathan Bandler, The Journal News, Gannett Co. Inc.,
One Gannett Drive, White Plains, NY 10604;
(914) 694-9300

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☑ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. *Deposition To be Taken Stenographically*

| PLACE OF DEPOSITION   THE LAW FIRM OF RAVI BATRA, P.C. 142 LEXINGTON AVENUE, NEW YORK, NY 10016 | DATE AND TIME  2/15/2008 2:00 pm |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See "Schedule A" attached; this request is made in good faith, the basis of which is the Verified Complaint filed in the within action, a copy of which is annexed as "Exhibit 2." Your attention is directed to ¶ 74 therein.

| PLACE   THE LAW FIRM OF RAVI BATRA, P.C. 142 LEXINGTON AVENUE, NEW YORK, NY 10016 | DATE AND TIME  2/15/2008 2:00 pm |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE  1/24/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

RAVI BATRA, Esq. (RB 4299), Attorney for Plaintiff Gina Pane,
142 Lexington Avenue, New York, NY 10016;  (212)545-1993

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

## SCHEDULE A

Please note that this request is made in good faith. The good faith basis for this request is the Verified Complaint filed with the United States District Court in the within matter, annexed to this subpoena as "Exhibit 2." *See e.g.* ¶ 74, therein.

Check # 9870 enclosed; $54.50 ($40.00 witness fee + $14.50 mileage)

## DEPOSITION TO BE TAKEN VIA STENOGRAPHIC MEANS

1.  The identity of the person(s) who initially contacted The Journal News on or about 2/2/06, 6 days after Gina Pane filed a complaint with the Greenburgh Police Department Internal Affairs unit, and the Westchester District Attorney's Office Public Integrity Bureau, that resulted in publication of the article annexed hereto as "Exhibit 1," and lit the media blaze to Pane's detriment;

2.  True copies of any notes taken during initial conversation/ communication with person(s) identified in # 1.

3.  True copies of all articles posted on The Journal News' internet web site regarding the complaints of Gina Pane referenced above; and,

4.  True copies of any articles published in The Journal News, or any other Gannett Co. Inc. entity, regarding the complaints of Gina Pane referenced above.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
　　　　　　　　　　DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the production, inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

Ravi Batra, Esq. #4299
The Law Firm of Ravi Batra, P.C.
Attorneys for plaintiff
The Batra Building
142 Lexington Avenue
NEW YORK, N.Y. 10016
212-545-1993; fax 212-545-1993

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

GINA ANNE NOEL PANE,
      *Plaintiff,*

- against -

THE TOWN OF GREENBURGH,
JOHN KAPICA, in his capacity as
CHIEF OF THE GREENBURGH
NEW YORK POLICE
DEPARTMENT, ERIK WARD,
POLICE OFFICER MICHAEL
MUESSER, SERGEANT ROBERT
GRAMAGLIA, SERGEANT
FRANCIS PUMILLO, DETECTIVE
FERTIG, JOHN DOE POLICE
OFFICERS 1 - 10, SO NAMED AS
THEIR IDENTITIES HAVE YET TO
BE ESTABLISHED.
      *Defendants.*

Civil Action Number:

# 07 CV 3216

**VERIFIED COMPLAINT**

**COMPLAINT DEMANDS DAMAGES, INJUNCTIVE RELIEF, AND A JURY TRIAL**



RECEIVED
APR 20 2007
U.S.D.C. S.D.N.Y.
CASHIERS

## I.   PRELIMINARY STATEMENT

1.    This is a civil rights action brought to vindicate the plaintiff's rights under the United States Constitution, the laws of the United States, and the laws of the State of New York.

1

2.    Gina Pane is a woman who at the time of the incident described herein was a full time college student striving to attain a career in the financial services industry. Since the incident, the plaintiff has completed her college studies, graduated with academic honors, and has been emotionally scarred and financially ruined by her inability to attain employment in her chosen field, as a result of the actions of the personal and municipal defendants.

3.    By this action, plaintiff seeks to restore public confidence in all police officers, who carry a badge of honor and are, and must remain, role models in society as well as to compel the defendants to faithfully comply with federal and state laws and constitutions and afford equal protection of the law, irrespective of a citizen's gender, status and profession, and to be compelled to institute new protocols, under the supervision of a federal monitor, to assure that the Town of Greenburgh's Police Department carries out it vital function of maintaining law and order in a civil society without itself committing illegal acts that serve to shame and debase the "badge," including, but not limited to, targeting a female for sexual gratification by getting rid of her male passenger, falsely arresting plaintiff, issuing a false "Fred Flintstone" criminal summons, Information # LV 417646 for "DWI-drugs," for "driving" while the car was legally parked and the engine turned off in the parking lot of the Greenburgh Multiplex Cinema, and then offering to drop the illegal and falsely inflated criminal charges in exchange for plaintiff's cooperation to gratify the sexual urges of many in general, and the

2

disgusting kinky sexual fetish of Erik Ward in particular.

4.    Plaintiff, Gina Pane, a 2006 graduate of Manhattanville College, with Honors, seeks compensatory and punitive damages for pain and suffering, lost wages and benefits, deprivation of a career on Wall Street caused by one or more persons unrelated to plaintiff, who called Local News 12 and Jonathan Bandler of The Journal News on February 2, 2006 in an attempt to cause damage and effectuated witness-intimidation of plaintiff as she, without her then-sole counsel, Tony Castro, present, had already filed on January 27, 2006 with the Greenburgh Police Department and with the Office of the District Attorney of Westchester County for the alleged illegal acts of professional misconduct charges against the police officers at the arrest site as well as those present at Police Department's headquarters the night of January 21, 2006 and against Erik Ward for his misconduct on January 21st and 22nd. The media blaze and frenzy was lit by the Evening Edition of Local News 12 with its airing of the Story starting with the 10:00pm broadcast on February 2, 2006, and the Journal News' piece appeared on February 3, 2006. The private and painful misconduct of the defendants visited upon plaintiff exploded exponentially by the story going "public," thereby exacerbating and magnifying the injury to plaintiff, and destroyed her career of choice, finance, on "Wall Street."

5.    By this action, plaintiff seeks money damages for lost wages and benefits, liquidated, compensatory, and punitive damages, and injunctive and declaratory relief, including orders requiring that the state record of plaintiff's arrest on January 21, 2006 be

expunged and, *inter alia*, the Greenburgh Police Department be enjoined to disband the Street Crimes Unit, and to take action to modify its practices and policies so as not to violate federal and state law and cause the deprivation of constitutional protections afforded to the citizens of these United States and of New York. The amount sought for punitive damages, $2,000,000, in its entirety is irrevocably assigned by Gina Anne Noel Pane and her counsel on April 20, 2006, a year ago, as follows: 75% to the "widows and orphans" fund maintained by the Police Benevolent Association for each of the villages, towns and cities in Westchester to share proportionately; and 25% of such amount to be donated to the fund in honor of hero-cop, Michael Frey.

## II.    JURISDICTION

6.    This action is brought pursuant to 42 U.S.C.1983, the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and other laws of the United States and the State of New York.

7.    This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. 1331, 1343.

8.    This Court has supplemental jurisdiction over the related state claims pursuant to 28 U.S.C.1367.

9.    Venue is proper pursuant to 28 U.S.C.1391(b) in that the plaintiff resides within the Southern District of New York, and the events complained of herein occurred within the Southern District of New York.

4

10.    Jurisdiction to grant declaratory judgment is conferred by 28 U.S.C.

2201, 2202. An award of costs and attorneys fees is authorized pursuant to 42 U.S.C.

1988.

## III.    PARTIES

11.    Plaintiff Gina Pane is a citizen of the United States of America,

residing at 64 Doral Greens Drive, Rye Brook, New York. As a resident of Westchester

County the plaintiff resides within the Southern District of New York.

12.    Defendant Town of Greenburgh is a municipal corporation within the State

of New York.

13.    Defendant Town of Greenburgh operates the Greenburgh Police

Department and is located entirely within the Southern District of New York.

14.    Defendant Erik Ward was, at the time the events leading to this cause of

action occurred, a Police Officer employed by and working under the authority of

defendant Town of Greenburgh. Erik Ward is sued in his official and individual

capacities.

15.    Defendant John Kapica is the Chief of the Greenburgh Police Department

and is sued in that official capacity.

16.    Police Officer Michael Muesser was at the time the events leading to this

cause of action occurred, a Police Officer employed by and working under the authority

of defendant Town of Greenburgh. Muesser is sued in his official and individual

capacities.

17.    Sergeant Robert Gramaglia was at the time the events leading to this cause of action occurred, a Police Officer employed by and working under the authority of defendant Town of Greenburgh. Gramaglia is sued in his official and individual capacities.

18.    Sergeant Francis Pumillo was at the time the events leading to this cause of action occurred, a Police Officer employed by and working under the authority of defendant Town of Greenburgh. Pumillo is sued in his official and individual capacities.

19.    Detective Fertig was at the time the events leading to this cause of action occurred, a Police Officer employed by and working under the authority of defendant Town of Greenburgh. Fertig is sued in his official and individual capacities.

20.    Defendants Greenburgh Police Officers John Does 1 - 10 are unidentified Police Officers employed by and working under the authority of defendant Town of Greenburgh, who, while on duty and on their job posts, participated in the false arrest, unlawful detention, and mistreatment of the plaintiff. Greenburgh Police Officers John Does 1 - 10 are sued in their official and individual capacities.

## IV.    AMOUNT IN CONTROVERSY

21.    The amount in controversy exceeds $1,000,000.00, exclusive of interest and costs.

6

## V.    **JURY DEMAND**

22.    The plaintiff demands a trial by jury on each and every one of her claims.

## VI.    **NOTICE OF CLAIM TO MUNICIPAL DEFENDANTS**

23.    On or about April 20, 2006, the plaintiff timely served a Notice of Claim upon the municipal defendants pursuant to New York General Municipal Law § 50-e. A true copy of this notice is appended hereto as Exhibit 1, and its contents are incorporated herein.

24.    On or about April 12, 2007, the municipal defendants conducted an Examination of Claim of the plaintiff under oath pursuant to New York General Municipal Law § 50-h.

25.    The municipal defendants are therefore on notice of the facts and circumstances alleged herein, and have been afforded ample opportunity to investigate the plaintiff's claims. More than thirty days has passed since the filing of the notice of claim and the claim has not been adjusted.

## VII.    **FACTUAL ALLEGATIONS**

26.    On or about January 21, 2006, at approximately 9:15 P.M., the plaintiff, while accompanied by a physically challenged male friend, was lawfully present within a parking lot of a privately owned movie theater complex at 320 Saw Mill River Road, Greenburgh, New York. The plaintiff, and her friend, had each previously purchased tickets for an motion picture that was scheduled to start shortly thereafter.

27.    As Ms. Pane and her friend sat in Ms. Pane's car,[1] which was parked head-on towards a perimeter wall, with its engine off, within the private parking facility of the movie theater Ms. Pane and her friend possessed tickets to, and were thereby licensed to be present, the plaintiff noticed what appeared to be red turret lights in her rear view mirror. Shortly thereafter, the plaintiff's car was approached by Police Officer Michael Muesser and Sergeant Robert Gramaglia, each police officers employed by the Police Department operated and exclusively controlled by the Town of Greenburgh, and on duty.

28.    The Greenburgh police personnel parked one of their police vehicles behind Ms. Pane's, such that movement of her vehicle was blocked. Accordingly, Ms. Pane was not free to leave the parking facility she was lawfully present within, and should have had the lawful authority to exit.

29.    Muesser and Gramagla, without probable cause, or even reasonable suspicion, approached Ms. Pane's car, that was parked and not then operational, and without provision of any warnings pursuant to Miranda v. Arizona, or its progeny, demanded to know if anything illegal was contained therein. Ms. Pane, initially responded by identifying herself to these officers as a college student, provided them with identification, including that provided by her college, and further provided the officers with the tickets she possessed for the upcoming movie showing. Nevertheless, frightened by the imposing circumstances of being completely surrounded, with police officers at the

---

[1]This motor vehicle was titled to Ms. Pane's mother; however, Ms. Pane was authorized to possess and use the vehicle and maintained exclusive access to it.

8

sides of her vehicle, and a police car at the rear, eventually provided the demanding officers a small quantity of marijuana that was in her purse.

30.     The police officers then directed Ms. Pane to exit her vehicle and physically restrained her with handcuffs and detained her within a Greenburgh police vehicle.

31.     Without permission or authority, and with no reasonable perception of threat to their physical safety, the police officers began to search through Gina Pane's belongings which were sealed within closed containers within her car.  As a result of questions posed by these police officers, Ms. Pane acknowledged the presence of play piercing needles within one of the sealed containers.  In response to this, the officers inquired if Ms. Pane was a "dominatrix," a part-time, lawful vocation, to which Ms. Pane admitted engaging.

32.     Shortly thereafter, at the behest of Greenburgh police personnel, defendant Erik Ward, then an on-duty Greenburgh Police Officer, accompanied by Detective Fertig, arrived at the movie theater parking lot and began to speak with Ms. Pane.  Defendant Ward advised Ms. Pane, in substance, that his police colleagues knew him to be "into" "sadomasochism" and "scat,"[2] and that as a result he was called to the scene. While speaking with Ms. Pane, defendant Ward advised her, in substance, that he enjoyed

---

[2]Upon information and belief "scat" is a slang term for attaining sexual pleasure through excretion of human feces (coprophilia, coprolagnia, fecophilia, fecalphilia) .

causing women distress while he attained sexual gratification for himself.[3]

33.     Defendant Ward then offered Ms. Pane, an illegal and dishonorable *quid pro quo*, to wit: a legitimate request to provide defendant Ward with information about any drug dealers **and** the illicit request that Ms. Pane assist defendant Ward in achieving deviant sexual gratification, in exchange for favorable treatment of charges resulting from her police contact and faster release time from the Police Headquarters.

34.     Ms. Pane was subsequently directed by all police personnel at the scene, including defendant Ward, to be cooperative and to amuse sergeant at the station house.

35.     Ms. Pane was transported by Muesser, in a Greenburgh Police Department vehicle, to the Greenburgh Police Department Station House, at 188 Tarrytown Road, Greenburgh, New York, a building maintained by and for the benefit of the Greenburgh Police Department and the Town of Greenburgh. During the course of the trip from the movie theater to police headquarters Muesser informed Ms. Pane that he attained sexual pleasure from "spanking."

36.     Upon arriving at Greenburgh police headquarters Ms. Pane was approached by Sergeant Francis Pumillo who made sexual innuendos to her. Notably, Pumillo commented, in substance, that Ms. Pane must not be used to being the one in handcuffs. This comment was clearly suggestive of fetish based sex play involving the voluntary wearing of handcuffs. The sergeant went further, asking Ms. Pane if she was "wearing a

---

[3]More specifically, in substance defendant Ward told Ms. Pane that he had previously fucked a woman in the mouth so hard that it made her vomit."

10

'strap-on' or do we have to strip search you?"[4]

37.    Ms. Pane was taken through the Greenburgh police prisoner holding and processing facility within police headquarters, wherein she was moved to various cells by different officers, and repeatedly subjected to additional comments about sexual proclivities.

38.    Defendant Ward approached Ms. Pane in the holding cells and while she was handcuffed within a holding cell, defendant Ward repeated his improper proposal that Ms. Pane provide defendant Ward with information about drug dealers **and** assist defendant Ward in achieving deviant sexual gratification, in exchange for favorable treatment of charges resulting from her police contact and faster release time from the Police Headquarters.   In furtherance of this proposal, defendant Ward sought Ms. Pane's cellular telephone number as part of her "cooperation" with him.

39.    Believing that defendant Ward could in fact cause expeditious processing and release from custody, and subsequent dismissal of criminal charges about to be levied against her, Ms. Pane complied with defendant Ward's request, and provided him with her cellular telephone number.  At or about this time, defendant Ward again repeated his story about causing women distress while he attained sexual gratification for himself and reiterated his interest in "scat."

---

[4]"Strap-on" is believed to reference a "dildo", which is a device resembling a human penis in shape, size, and overall appearance, connected to a harness, that can be worn by a person to penetrate a sexual partner vaginally, anally or orally.

11

40.    While detained in the police processing area, Ms. Pane was taken to a fingerprinting room, wherein John Doe Police Officers #1 (slight in height and had what appeared to be a "beer belly") and # 2 (taller with very short brown hair) subjected her to further sexual improprieties, specifically asking her about "spanking" and "medical role play." John Doe Officer #1 then informed Ms. Pane that he enjoyed being spanked and John Doe Officer #2 agreed that John Doe Officer #1 did indeed like being spanked. Thereafter, John Doe Officer # 1demanded that Ms. Pane spank him, which order she complied with.

41.    At some point that evening, John Doe Officer # 3  (with reddish hair) entered the room while Ms. Pane was detained and took various Polaroid pictures of various parts of Ms. Pane's body - without her consent - and without her ability to protest. John Doe Officer # 3 then left briefly and returned at which time he used his cellular telephone's camera to video record Ms. Pane whilst she was in a holding cell.

42.    John Doe Officer # 3 then handed the photographs to various John Doe Greenburgh police officers, who each inquired of Ms. Pane to identify her internet website address and her "dominatrix-name." Upon information and belief, John Doe Officer # 3's actions with the photographs reveal that these images were not taken or disseminated as part of the arrest processing procedures.

43.    Sergeant Pumillo, then interrupted the misconduct - not for disciplinary or security purposes, but instead to warn his subordinates and colleagues that there were security video cameras in operation which could capture their wrongdoing. Thereafter,

12

Pumillo instructed Ms. Pane to embarrass an African-American Police Officer named "Colby" by pretending "Colby" was her "spanking-client." Ms. Pane complied with Pumillo's demand, to the embarrassment of "Colby," and in the presence of many officers.

44.    Although Ms. Pane was not operating a motor vehicle while approached by the police, she was subjected to a demeaning, improper, and unjust demand: either provide a sample of urine or blood, or face suspension of her driving privileges. Notwithstanding that Ms. Pane was not driving a car, under duress of the inability to continue her college studies without the transportation afforded by a car, she complied with the demand and urinated for the police. Only after compliance was Ms. Pane provided with her *Miranda* rights.

45.    Prior to being released from Greenburgh police headquarters, Ms. Pane asked Muesser if defendant Ward could indeed help her with dropping her charges. Muesser said "yes," and gave Ms. Pane a Greenburgh Police Department business card containing defendant Ward's name and a telephone number.

46.    Ms. Pane was issued two criminal charges: Information # LV 417646 for "DWI-drugs" and Appearance Ticket #W511529 for "criminal possession marijuana."

47.    The "DWI-drugs" charge was rapidly dismissed by prosecutors with the Westchester County District Attorney's Office on March 16, 2006, citing "insufficient

13

grounds."[5] Upon information and belief, this dismissal was based upon the facts that Ms.

Pane was not driving and did not even have her engine on while parked – and therefore

under New York law was not "operating" a motor vehicle.

48.    The marijuana possession charge was resolved on or about February 21,

2007, by entry of an Adjournment in Contemplation of Dismissal,[6] five days after

defendant Ward was fired by the Town of Greenburgh.

---

[5]N.Y. C.P.L. § 160.50(3) provides, in pertinent part, that

a criminal action or proceeding against a person shall be considered terminated
in favor of such person where:

(b) an order to dismiss the entire accusatory instrument against such person
. . . was entered or deemed entered, or an order terminating the prosecution
against such person was entered . . . and the people have not appealed from
such order or the determination of an appeal or appeals by the people from
such order has been against the people . . .

[6] N.Y. C.P.L. § 170.55(2) provides, in pertinent part, that

[a]n adjournment in contemplation of dismissal is an adjournment of the action
without date ordered with a view to ultimate dismissal of the accusatory instrument
in furtherance of justice. . . Upon application of the people, made at any time not
more than six months . . .after the issuance of such order, the court may restore
the case to the calendar upon a determination that dismissal of the accusatory
instrument would not be in furtherance of justice, and the action must thereupon
proceed. If the case is not so restored within such six months . . . the accusatory
instrument is, at the expiration of such period, deemed to have been dismissed by the
court in furtherance of justice.

N.Y. C.P.L. § 170.55(8) provides that

[t]he granting of an adjournment in contemplation of dismissal shall not be deemed
to be a conviction or an admission of guilt. No person shall suffer any disability or
forfeiture as a result of such an order. Upon the dismissal of the accusatory
instrument pursuant to this section, the arrest and prosecution shall be deemed a
nullity and the defendant shall be restored, in contemplation of law, to the status he
occupied before his arrest and prosecution.

49.     Ms. Pane was unjustly arrested, wrongly detained, and falsely imprisoned for approximately three hours. During that time she was traumatized, humiliated, and dominated by police personnel acting under color of law in a unprofessional manner that evinces a criminal disregard for their civil and constitutional obligations owed to Ms. Pane.

50.     Within hours of being released on Sunday, January 22, 2006, at approximately 2:30 AM, Ms. Pane was called by defendant Ward on her cellular telephone and informed that he wanted to meet for coffee later that day. Ms. Pane agreed to subsequently make arrangements to meet.

52.     On January 22, 2006, at approximately 1:15 PM, defendant Ward called Ms. Pane and left a message on her cellular telephone voice mail. After a series of phone calls, defendant Ward arranged to meet Ms. Pane on the grounds of the Doral Arrowwood resort in Rye Brook, New York.

53.     Defendant Ward arrived as scheduled, driving a four wheel drive "Jeep" type motor vehicle. Upon Ward's arrival, the exterior of the vehicle was clean, and Ms. Pane entered it - believing she was taking steps to "cooperate" with the police, in order to help herself.

54.     Upon information and belief, defendant Ward did not request permission from his superiors to engage in informant type discussions with Ms. Pane, although required to do so by Procedure 405.07 of the regulations of the Greenburgh Police Department.

15

55.    Upon Ms. Pane's entry into the vehicle, a conversation ensued wherein defendant Ward instructed Ms. Pane to first discuss information she possessed about a narcotics dealer. Ward emphasized that the reason he wanted to first focus on the drugs was because once he became embroiled in discussing his sexual fetishes, he would not be able to deviate from that discussion.

56.    In substance, defendant Ward directed Ms. Pane to call a person she believed to be involved in the sale of cocaine, and arrange to purchase a set dollar amount of the narcotic. Defendant Ward assured Ms. Pane that steps would be taken to ensure her safety - and to prevent the purported drug dealer from learning of her involvement in his arrest. Thereafter, in defendant Ward's presence, and at his insistence, Ms. Pane left a message for this person to call her back. This message was never responded to.

57.    After making this call, Ms. Pane was then again subjected to defendant Ward's story involving oral sex and vomit. Defendant Ward suggested that Ms. Pane accompany him to a motel in Bronx County that he used for fetish play because it was away from people in Greenburgh who knew him and were not aware of his proclivities. Specifically, defendant Ward asked that Ms. Pane go with him in order that she could defecate on him, or in his presence.

58.    While in defendant Ward's vehicle, and later, Ward displayed unique parts of his body to Ms. Pane. Notably, he revealed that he shaved the hair from most of his body, and that he had a unique pattern of pubic hair as a result of his shaving, such that his pubic hair resembled Adolph Hitler's moustache.

16

59.    Ms. Pane refused to go to Bronx County; however, she suggested a secluded woodsy area nearer to where they already were. Ms. Pane then directed defendant Ward as he drove to the entrance of the woods, at which time Ward engaged the four wheel drive function of his vehicle and drove them into the woods.

60.    As Ms. Pane exited the vehicle, defendant Ward advised her that he did not have any implements to wipe away any defecation. In that light, Ward's initial request that Ms. Pane defecate on him was substituted by the alternative of her defecating while he watched.

61.    As Ms. Pane defecated on the ground in the woods, defendant Ward proceeded to masturbate until such time as he ejaculated on the feces excreted by Ms. Pane. Defendant Ward then proceeded to smell Ms. Pane's anus and buttocks.

62.    Ms. Pane then used items of nature recovered from within the woods in order to wipe herself clean. At that time, defendant Ward began to repeatedly demand that Ms. Pane never disclose to anyone what had occurred. Ms. Pane agreed to defendant Ward's demands, at which time they each returned to Ward's vehicle and proceeded back to the resort parking lot. Upon returning, the exterior of the vehicle was now, in part, covered with mud, evidencing Ward's foray into the forest with Ms. Pane.

63.    Ms. Pane met with defendant Ward, accompanied him to the woods, and complied with his fetish based demands, because she believed she had little to no choice because of defendant Ward's status as a Greenburgh police officer, her concerns for her future, and her knowledge that other members of the Greenburgh police force were

17

willing to put forth false charging information (i.e. falsely alleging she was operating a motor vehicle).

64.    As defendant Ward met Ms. Pane during his duties as a Greenburgh police officer, and used his apparent authority as a police officer to compel her cooperation, and subsequent conversations, meeting and fetish based actions, he was acting at all times under color of law.

65.    While defendant Ward attempted to contact Ms. Pane by telephone the next day, she intentionally avoided his call. Realizing that something was truly awry, Ms. Pane eventually retained the services of an attorney and reported the wrongdoing on the part of defendant Ward, and the other police personnel to supervisory staff at the Greenburgh police department, internal investigative staff at the Greenburgh police department, and the Westchester County District Attorney's Office.

66.    On or about January 27, 2006, at the direction of Lieutenant Vincent LoGiudice of the Greenburgh Police Department's internal investigative unit, a search of the wooded area referred to above, wherein Ms. Pane defecated at the direction of defendant Ward, was conducted. At that time, police personnel recovered feces where Ms. Pane directed them.

67.    Upon information and belief, laboratory analysis conducted by a laboratory contracted by the Westchester County District Attorney confirmed that the recovered material was, in fact, feces.

68.    Soil was recovered from the wooded area referred to above, and from

18

defendant Ward's automobile, and forwarded to the Federal Bureau of Investigation (FBI) for analysis. Upon information and belief, the FBI laboratory concluded that portions of soil recovered from defendant Ward's vehicle were "indistinguishable in color, texture, and mineralogy" to soil recovered from the wooded area.

69.     Upon information and belief, during the internal investigation a search warrant was obtained authorizing police personnel to search defendant Ward's residence and to seize, *inter alia*, his computer.

70.     Upon information and belief, sources within the Greenburgh police department unlawfully informed defendant Ward about the search warrant prior to its execution. As a result, defendant Ward had an opportunity to dispose of the computer and any evidence of his fetishes contained therein. Notably, upon information and belief, the computer defendant Ward owned had been recently purchased by him, and he subsequently asserted that he disposed of it because it had "viruses."

71.     Upon information and belief feces excreted from a human being with a healthy colon does not contain DNA. Moreover, while human semen does contain DNA, upon information and belief, the exposure of semen to the harsh bacteria contained in human feces is destructive to the DNA present. Moreover, exposure to the elements, such as those contained in the wooded area described above, is also damaging to DNA that could be within semen.

72.     Upon information and belief, defendant Ward has concocted his versions of events to be somewhat consistent with the scientific evidence. Most crucially, it was not

19

until the laboratory revealed that DNA could not be obtained from the samples obtained in the woods that defendant Ward issued any sort of denial of Ms. Pane's claims. If he in fact had not masturbated in the woods and ejaculated on Ms. Pane's feces, he simply could have, and should have said so immediately. That he did do it is the only reasonable explanation for awaiting laboratory results.[7] Ward was justifiably fired from his position of trust and honor, having debased both, on February 16, 2007 by the municipal defendants for violating their protocol.

73.     While Ms. Pane was involved in part time business as a "dominatrix," her activities were discreet and unknown to her family. While she maintained an internet website which advertised her services, her true name was not mentioned, nor was her address. In fact, it was, and remains Ms. Pane's belief that her website would only be found and accessed by people actively involved in the fetish of "domination." As such, she believed that her part time involvement in the fetish world would never be disclosed to anyone outside of the universe of people practicing the fetish - whom she further believed tended to be discreet in discussions of their behaviors.

74.     Upon information and belief, on or about February 2, 2006, an unknown source contacted Jonathan Bandler, a reporter at *The Journal News* by telephone and told the reporter about the arrest of the "dominatrix." Similarly, Local News12 TV received one or more anonymous calls on February 2, 2006, causing that TV station to run a story

---

[7]Although the plaintiff acknowledges that Ward, like any other American, has the right to remain silent, he declined to exercise that right by falsely denying the claims at the times that he did.

on the "dominatrix" on February 2, 2006. This was more than a week since Ms. Pane's police contact and thus devoid of any valid claim of newsworthiness, yet a media frenzy focusing on Ms. Pane began. Coverage by major television and radio stations soon followed, causing Gina to literally run out of fear from the camera as captured by News12, fear for the destruction of a future career on Wall Street, as well as contemplate not going forward with her complaint against the officers who acted illegally and dishonorably. Upon information and belief, these media reports were designed as witness-intimidation and resulted in aggravating the injury to Gina Pane.

75.     As a result of the above misconduct, Gina has received medical care and treatment, including hospital emergency room treatment, and has been taking medication, including, propranolol 10mg (aka Inderal), Lorazepam 1mg (aka Ativan), and *inter alia,* Lexapro 10mg, an antidepressant.

76.     As a result of the misconduct, and the mass dissemination of information about Ms. Pane, including revelations of the false and unconstitutionally based criminal charges against Ms. Pane, Ms. Pane's secrets have been exposed, and her reputation irreparably damaged. This is evidenced by her inability to obtain a job in the financial services industry, despite an honors degree in economics.

77.     Upon information and belief, Ms. Pane has sought employment, gained interviews on the basis of her resume, and then upon the completion of background checks which reveal that she was involved in fetish behavior, and significantly that criminal charges were filed against her - notwithstanding their ultimate resolution - she is

21

denied employment she is otherwise well qualified for.

78.    The defendants' violated the plaintiff's rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and the laws of the state of New York.  As a result of the defendants' unconstitutional and unlawful actions, the plaintiff has suffered severe emotional distress and damage to her reputation. She seeks a declaration that the defendants violated her rights and an award of damages and attorney's fees.

## VIII.    COUNTS PURSUANT TO 42 U.S.C. 1983

### FIRST COUNT
### (U.S. Const. 4th Amend.)

79.    The plaintiff repeats, reiterates, and reallages each and every allegation stated in the preceding paragraphs as if set forth in full herein.

80.    In arresting, searching and detaining the plaintiff without sufficient cause, the defendant police officers engaged in unreasonable searches and seizures in violation of the Fourth Amendment to the United States Constitution.

81.    Municipal liability for these violations of the Fourth Amendment is based upon the individual officers in this case acting in a manner consistent with the policy, custom, and usage of the Greenburgh Police Department.

82.    Moreover, municipal liability for these violations of the Fourth Amendment is further based upon the failure of the Greenburgh Police Department to train, supervise and discipline, amounting to deliberate indifference to the constitutional rights of plaintiff

22

where, as here, municipal officials are aware that their law enforcement officials will generally encounter individuals and to detain or arrest these individuals; that such encounters present law enforcement personnel with unique scenarios and difficult choices that proper training, supervision, and discipline would make easier; and that the wrong decision by police officers will frequently cause the deprivation of constitutional rights.

83.    Importantly, this failure to supervise is clearly demonstrated by the facts herein as supervisors were involved in the tortious conduct towards the plaintiff.

## SECOND COUNT
### (U.S. Const. 14th Amend.)

84.    The plaintiff repeats, reiterates, and reallages each and every allegation stated in the preceding paragraphs as if set forth in full herein.

85.    In restraining the plaintiff in handcuffs, and in cells, absent a constitutionally proper basis, while mocking her, the defendant officers deprived the plaintiff of her liberty without due process of law in violation of the Fourteenth Amendment of the United States Constitution.

86.    Municipal liability for these violations of the Fourteenth Amendment is based upon the individual officers in this case acting in a manner consistent with the policy, custom, and usage of the Greenburgh Police Department.

87.    Moreover, municipal liability for these violations of the Fourth Amendment is further based upon the failure of the Greenburgh Police Department to train, supervise and discipline, amounting to deliberate indifference to the constitutional rights of plaintiff

23

where, as here, municipal officials are aware that their law enforcement officials will generally encounter individuals and to detain or arrest these individuals; that such encounters present law enforcement personnel with unique scenarios and difficult choices that proper training, supervision, and discipline would make easier; and that the wrong decision by police officers will frequently cause the deprivation of constitutional rights.

88.     Importantly, this failure to supervise is clearly demonstrated by the facts herein as supervisors were involved in the tortious conduct towards the plaintiff.

## THIRD COUNT
### (U.S. Const. 14th Amend.)
### (Equal Protection)

89.     The plaintiff repeats, reiterates, and reallages each and every allegation stated in the preceding paragraphs as if set forth in full herein.

90.     In participating in a pattern of harassment against the plaintiff based upon her status as a woman, while she detained and restrained in the custody of the defendants, without any liberty or freedom of movement, and thereby required to be subjected to the demeaning and denigrating sex based speech, comments, and actions of the defendants collectively, the defendant officers deprived the plaintiff of Equal Protection of law in violation of the Fourteenth Amendment of the United States Constitution.

91.     Municipal liability for these violations of the Fourteenth Amendment is based upon the individual officers in this case acting in a manner consistent with the policy, custom, and usage of the Greenburgh Police Department.

92.   Moreover, municipal liability for these violations of the Fourth Amendment is further based upon the failure of the Greenburgh Police Department to train, supervise and discipline, amounting to deliberate indifference to the constitutional rights of plaintiff where, as here, municipal officials are aware that their law enforcement officials will generally encounter individuals and to detain or arrest these individuals; that such encounters present law enforcement personnel with unique scenarios and difficult choices that proper training, supervision, and discipline would make easier; and that the wrong decision by police officers will frequently cause the deprivation of constitutional rights.

93.   Importantly, this failure to supervise is clearly demonstrated by the facts herein as supervisors were involved in the tortious conduct towards the plaintiff.

### FOURTH COUNT
### (U.S. Const. 5th Amend.)

94.   The plaintiff repeats, reiterates, and reallages each and every allegation stated in the preceding paragraphs as if set forth in full herein.

95.   Municipal liability for these violations of the Fifth Amendment is based upon the individual officers in this case acting in a manner consistent with the policy, custom, and usage of the Greenburgh Police Department.

96.   Moreover, municipal liability for these violations of the Fifth Amendment is further based upon the failure of the Greenburgh Police Department to train, supervise and discipline, amounting to deliberate indifference to the constitutional rights of plaintiff where, as here, municipal officials are aware that their law enforcement officials will

generally encounter individuals and to detain or arrest these individuals; that such encounters present law enforcement personnel with unique scenarios and difficult choices that proper training, supervision, and discipline would make easier; and that the wrong decision by police officers will frequently cause the deprivation of constitutional rights.

97.    Importantly, this failure to supervise is clearly demonstrated by the facts herein as supervisors were involved in the tortious conduct towards the plaintiff.

## IX.    STATE LAW BASED COUNTS

### FIFTH COUNT
### (FALSE ARREST)

98.    The plaintiff repeats, reiterates, and reallages each and every allegation stated in the preceding paragraphs as if set forth in full herein.

99.    As a result of the actions of the municipal and individual defendants, the plaintiff was confined against her will.

100.    The plaintiff was continuously aware that she was not free to go.

101.    The defendants were without privilege to confine the plaintiff.

102.    The defendants had no probable cause to stop, arrest, detain, or otherwise confine the plaintiff.

103.    The defendants did not have a warrant to arrest or detain the plaintiff.

104.    The municipal defendants are liable to the plaintiff under the doctrine of *respondeat superior*.

26

## SIXTH COUNT
## (FALSE IMPRISONMENT)

105.    The plaintiff repeats, reiterates, and reallages each and every allegation stated in the preceding paragraphs as if set forth in full herein.

106.    As a result of the actions of the municipal and individual defendants, the plaintiff was confined against her will.

107.    The plaintiff was continuously aware that she was not free to go.

108.    The defendants were without privilege to confine the plaintiff.

109.    The defendants had no probable cause to stop, arrest, detain, or otherwise confine the plaintiff.

110.    The defendants did not have a warrant to arrest or detain the plaintiff.

111.    The municipal defendants are liable to the plaintiff under the doctrine of *respondeat superior*.

## SEVENTH COUNT
## (MALICIOUS PROSECUTION)

112.    The plaintiff repeats, reiterates, and  reallages each and every allegation stated in the preceding paragraphs as if set forth in full herein.

113.    As a result of the actions of the municipal and individual defendants, criminal proceedings were commenced against the plaintiff.

114.    These proceedings were terminated in favor of the plaintiff.

115.    There was no probable cause to arrest the plaintiff.

116.    The defendants' collectively brought these charges against the plaintiff with

27

actual malice to the plaintiff.

117.    The municipal defendants are liable to the plaintiff under the doctrine of *respondeat superior*.

## EIGHTH COUNT
### (New York Civil Rights Law §40-c)
### (DISCRIMINATION)

118.    The plaintiff repeats, reiterates, and reallages each and every allegation stated in the preceding paragraphs as if set forth in full herein.

119.    As a result of the actions of the municipal and individual defendants, the plaintiff was denied Equal Protection of the laws of the state of New York.

120.    As a result of the actions of the municipal and individual defendants, the plaintiff was treated differently while being detained against her will, and thereby discriminated against because she was a woman.

121.    The municipal defendants are a subdivision of the state of New York.

122.    The individual defendants were all acting as agents of a municipal subdivision of the state of New York.

## NINTH COUNT
### (BATTERY)

123.    The plaintiff repeats, reiterates, and reallages each and every allegation stated in the preceding paragraphs as if set forth in full herein.

124.    As a result of the actions of the municipal and individual defendants, the plaintiff was confined against her will.

125.    In order to detain and restrain the plaintiff, the individual defendants touched her with their hands.

126.    In order to detain and restrain the plaintiff, the individual defendants placed the defendant in handcuffs.

127.    The defendants were without privilege to confine the plaintiff.

128.    The defendants had no probable cause to stop, arrest, detain, or otherwise confine the plaintiff.

129.    The defendants did not have a warrant to arrest or detain the plaintiff.

130.    The arrest of the plaintiff was unlawful.

131.    The contact by the defendants was offensive to the plaintiff.

132.    The defendants did not have the plaintiff's consent to make contact with her.

133.    The municipal defendants are liable to the plaintiff under the doctrine of *respondeat superior*.

## TENTH COUNT
## (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

134.    The plaintiff repeats, reiterates, and reallages each and every allegation stated in the preceding paragraphs as if set forth in full herein.

135.    The behavior of the individual and municipal defendants as described herein was extreme and outrageous.

136.    The individual and municipal defendants intended to cause the plaintiff

29

severe emotional distress

137.    The individual and municipal defendants did cause the plaintiff severe

emotional distress.


## X.    PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment granting for each of the counts the

following:

A. injunctive relief that changes the protocol in the Town of Greenburgh's

Police Department, including, but not limited to, improving the operation of the Police

Department of the Town of Greenburgh, the appointment of a court monitor for a

reasonable period of time so as to effectuate a change in Greenburgh police culture to

respect the law and reject rogue cops, such as Erik Ward, so that the necessary public

confidence is restored and respect for police officers everywhere is enhanced;

B. a fair and reasonable amount of $5,000,000 that will properly compensate

plaintiff for her pain and suffering, lost wages and pension benefits, including, all health

care benefits, and the loss of a high-paying career in finance on "Wall Street";

C. a fair and reasonable amount of $2,000,000 as and for punitive damages, which

in its entirety, Gina Anne Noel Pane and her counsel irrevocably assigned on April 20,

2006: 75% to the "widows and orphans" fund maintained by the Police Benevolent

Association for each of the villages, towns and cities in Westchester to share

proportionately; and 25% of such amount to be donated to the fund in honor of hero-cop,

Michael Frey;

D. attorneys fees as and for prosecuting the instant case as well as defending plaintiff against Greenburgh's illegal and fraudulently inflated criminal charges leveled against plaintiff, along with all additional relief as may appear just and proper to the Court.

Dated: New York, New York
      April 20, 2007

                        Respectfully,
                        **THE LAW FIRM OF RAVI BATRA, P.C.**
                        *Counsel for Plaintiff*

                        Ravi Batra, Esq. (RB 4299)
                        Todd B. Sherman, Esq.
                        (Not admitted in the Southern District of New York)
                        The Batra Building
                        142 Lexington Avenue
                        New York, NY 10016
                        (212) 545-1993

check #9272 $350
\pane.696\panecomplaint1983

31

Docket No.

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

**GINA ANNE NOEL PANE,**
*Plaintiff,*

- against -

**THE TOWN OF GREENBURGH,**
**JOHN KAPICA, in his capacity as CHIEF OF THE GREENBURGH NEW YORK**
**POLICE DEPARTMENT, ERIK WARD, POLICE OFFICER MICHAEL**
**MUESSER, SERGEANT ROBERT GRAMAGLIA, SERGEANT FRANCIS**
**PUMILLO, DETECTIVE FERTIG, JOHN DOE POLICE OFFICERS 1 - 10, SO**
**NAMED AS THEIR IDENTITIES HAVE YET TO BE ESTABLISHED.**
*Defendants.*

SUMMONS and COMPLAINT

THE LAW FIRM OF RAVI BATRA, P.C.
*Counsel for plaintiff Pane*
The Batra Building
142 Lexington Avenue
New York, NY 10016
(212)545-1993

32