UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
GINA ANNE NOEL PANE,                                  :

               Plaintiff,                       :        No. 07 Civ. 3216 (WP4)(LMS)
   -against-                                          :

THE TOWN OF GREENBURGH, JOHN KAPICA,  :
in his capacity as Chief of the Greenburgh Police
Department, ERIK WARD, POLICE OFFICER       :
MICHAEL MUESSER, SERGEANT ROBERT
GRAMAGLIA, SERGEANT FRANCIS PUMILLO,:
DETECTIVE PAUL FERTIG, JOHN DOE POLICE
OFFICERS 1-10 so named as their identities have    :
yet to be established,
                                                     :

               Defendants.
-----------------------------------------------------------------x


# MEMORANDUM OF LAW OF NONPARTY WITNESS JONATHAN BANDLER IN SUPPORT OF HIS MOTION TO QUASH AND/OR MODIFY




SATTERLEE STEPHENS BURKE & BURKE LLP

Mark A. Fowler (MF-4605)
Glenn C. Edwards (GE-0696)
Attorneys for Nonparty Witness Jonathan Bandler
230 Park Avenue, Suite 1130
New York, NY 10169
(212) 818-9200


722547_1

## TABLE OF CONTENTS

|  | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| ARGUMENT | 2 |
|     I.    MR. BANDLER IS ENTITLED TO THE ABSOLUTE PROTECTION OF THE NEW YORK SHIELD LAW | 2 |
|     II.   THE IDENTITY OF MR. BANDLER'S SOURCE IS ALSO PRIVILEGED UNDER FEDERAL LAW | 5 |
| CONCLUSION | 8 |

Nonparty witness Jonathan Bandler respectfully submits this memorandum of law in support of his motion to quash and/or modify the subpoena dated January 24, 2008 and served upon him by plaintiff Gina Pane.

### PRELIMINARY STATEMENT

Jonathan Bandler is a reporter for The Journal News, a daily newspaper that is widely distributed throughout Westchester, Bronx, New York, Putnam, and Rockland Counties and in surrounding areas of New York and Southern Connecticut. (Declaration of Jonathan Bandler ("Bandler Decl.") ¶ 1.) Mr. Bandler wrote an article for The Journal News, dated February 3, 2006, in which he reported on some of the events underlying the present lawsuit which plaintiff has filed against the Town of Greenburgh and several of its police officers. (Id. ¶ 2 & Ex. A.) The article, however, did not mention either plaintiff's name or her profession.

By attempted service of a subpoena dated January 24, 2008, plaintiff asserts that an unidentified person "initially contacted The Journal News on or about 2/2/06" and that such contact "resulted in publication of [the Article]." (Subpoena (Bandler Decl. Ex. B.) Sched. A, ¶ 1.) Plaintiff's subpoena seeks to depose Mr. Bandler with respect to the identity of that source and also seeks documents connected with the alleged conversation Mr. Bandler had with that source.[1]

Without revealing the content of any conversations, any such contact as described in the subpoena was with a confidential source. (Bandler Decl. ¶ 6.) Accordingly, as a journalist who received information in the course of reporting from a confidential source, Mr. Bandler is absolutely privileged from revealing any nonpublished information by New York's Shield Law,

---

[1] In response to the document request, Mr. Bandler on February 8 served objections on plaintiff pursuant to Fed. R. Civ. P. 45(c)(2)(B). While such objections serve to suspend any obligation on Mr. Bandler's part to produce until and unless plaintiff moves to compel, see id. 45(c)(2)(B)(ii), it was agreed by stipulation that Mr. Bandler would instead move to quash the subpoena in its entirety.

722547_1

N.Y. Civ. Rts. L. § 79-h, which either applies of its own force in this matter or to which the Court should defer as a matter of comity given the lack of relevance of the evidence sought by plaintiff to any federal interest in this case. Moreover, even under the qualified privilege available to Mr. Bandler under federal law, plaintiff cannot make the requisite "clear and specific showing" that the evidence she seeks is "highly material and relevant, necessary or critical to the maintenance of [her] claim, and not obtainable from other available sources." Accordingly, plaintiff cannot overcome the journalist's privilege that attaches to Mr. Bandler's confidential source reporting, and plaintiff's subpoena should be quashed in its entirety.[2]

## ARGUMENT

### I. MR. BANDLER IS ENTITLED TO THE ABSOLUTE PROTECTION OF THE NEW YORK SHIELD LAW

New York's journalist Shield Law provides, in relevant part,

> Exemption of professional journalists and newscasters from contempt: Absolute protection for confidential news. Notwithstanding the provisions of any general or specific law to the contrary, no professional journalist or newscaster presently or having previously been employed or otherwise associated with any newspaper . . . shall be adjudged in contempt by any court in connection with any civil or criminal proceeding . . . for refusing or failing to disclose any news obtained or received in confidence or the identity of the source of any such news coming into such person's possession in the course of gathering or obtaining news for publication or to be published in a newspaper . . . by which such person is professionally employed or otherwise associated in

---

[2] As an initial matter, plaintiff's subpoena is invalid and should be quashed because plaintiff did not "deliver[] a copy to the named person" as required by Rule 45(b)(1). Courts have generally interpreted Rule 45 to mean what it says, i.e., that personal service upon the witness is required. See, e.g., GMA Accessories, Inc. v. Eminent, Inc., No. 07 Civ. 3219, 2007 WL 4456009, at *1 (S.D.N.Y. Dec. 11, 2007); see also 9A Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2454 ("The longstanding interpretation of Rule 45 has been that personal service is required."). Mr. Bandler was not personally served; the subpoena was either left at or mailed to the Journal News. (Bandler Decl. ¶ 4.) The service was therefore defective. See United States v. Philip Morris Inc., 312 F. Supp. 2d 27, 37-38 (D.D.C. 2004) (subpoenas left with mail room or support staff at witness's workplace constituted "clear" violation of Rule 45(b)(1)).

2

> a news gathering capacity notwithstanding that the material or identity of a source of such material or related material gathered by a person described above performing a function described above is or is not highly relevant to a particular inquiry of government and notwithstanding that the information was not solicited by the journalist or newscaster prior to disclosure to such person.

N.Y. Civ. Rts. L. § 79-h(b). Journalists therefore have an absolute privilege in New York to avoid divulging any information obtained during the course of news gathering from a confidential source, a "reflect[ion of] our state's high regard for the values of free speech and a free press insofar as it protects journalists and newscasters from penalties for maintaining the confidentiality of their news-gathering activities." In re Grand Jury Subpoenas Served on Nat'l Broad. Co., 178 Misc. 2d 1052, 1054-55, 683 N.Y.S.2d 708 (Sup. Ct. N.Y. County 1998).

The Shield Law should apply in this case. It is clear that federal courts are required to apply the Shield Law to state-law claims in diversity cases. See Fed. R. Evid. 501; In re Application to Quash Subpoena to Nat'l Broad. Co., 79 F.3d 346, 351 (2d Cir. 1996). Moreover, the Second Circuit has held that where the "evidence sought from [the journalist] is relevant to both the federal and state claims," federal privilege law applies. Von Bulow v. Von Bulow, 811 F.2d 136, 141 (2d Cir. 1987). Here, while it is true that plaintiff has alleged both federal and state causes of action, the information sought is simply not relevant to the claims arising under federal law.[3]

Plaintiff's apparent theory is that one or more of the defendants deliberately fed information to Mr. Bandler and other journalists for the purpose of publicly humiliating Ms.

---

[3] In such a situation, it is clear that the federal claims, if brought alone, would not support the evidence sought because it is irrelevant and therefore not discoverable. Likewise, the state claims, if brought alone in state court, would be subject to the absolute privilege of the Shield Law. It would be illogical, therefore, if the material, immune from discovery in either action standing alone, were somehow made discoverable simply by the expedient of consolidation into one action.

Pane. (Compl. ¶ 74.) Even if this were true, however, it is difficult to see how that fact is relevant to any plaintiff's § 1983 claims, which allege violations of the Fourth, Fifth and Fourteenth Amendments based on her treatment while in police custody. (See Compl. ¶¶ 80, 85, 90.) Since the source and circumstances of Mr. Bandler's information would appear to have no bearing on the federal claims herein, the New York Shield Law applies in this matter.

Even if the Court should determine that the Shield Law does not apply of its own force to this matter, however, the Court should still afford Mr. Bandler its protections as a matter of comity. It is well-settled that "'a strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy.'" Wilson v. City of New York, No. 06-CV-229, 2007 WL 4565138, at *1 (E.D.N.Y. Dec. 21, 2007) (quoting Lora v. Bd. of Educ., 74 F.R.D. 565, 576 (E.D.N.Y. 1977)); von Bulow, 811 F.2d at 144 ("neither should we ignore New York's policy of giving protection to professional journalists," finding "the underlying policies served by the New York Shield Law and federal law are congruent"); see also Komlosi v. N.Y. State Office of Mental Retardation & Dev. Disabilities, No. 88 Civ. 1792, 1992 WL 77544, at *2 (S.D.N.Y. Apr. 3, 1992) (applying New York privilege law to bar discovery in § 1983 case). As stated by Judge Weinstein, "If the state holds out the expectation of protection to its citizens, they should not be disappointed by a mechanical and unnecessary application of the federal rule." Lora, 74 F.R.D. at 576.

As already discussed, the identity of Mr. Bandler's confidential source is simply not relevant, or at best marginally relevant, to the federal civil rights claims made by plaintiff. Recognition and application of New York's privilege in this case would therefore result in no

4

"substantial cost" to federal interests.

The application of the Shield Law makes it clear that the subpoena to Mr. Bandler must be quashed in its entirety. Mr. Bandler received any information from the source targeted by plaintiff's subpoena "in confidence" and "in the course of gathering or obtaining news for publication." N.Y. Civ. Rts. L. § 79-h(b). Accordingly, such information, including the identity of the source, is absolutely privileged from disclosure.

## II. THE IDENTITY OF MR. BANDLER'S SOURCE IS ALSO PRIVILEGED UNDER FEDERAL LAW

Even should the Court determine that the New York Shield Law should not apply, nevertheless "'[t]he Second Circuit has long recognized the existence of a qualified privilege for journalistic information.'" Schiller v. City of New York, 245 F.R.D. 112, 118 (S.D.N.Y. 2007) (quoting Gonzales v. Nat'l Broad. Co., 194 F.3d 29, 32 (2d Cir. 1999)).[4] While not absolute, it is nevertheless presents a high hurdle where confidential information is involved:

> [T]o protect the important interests of reporters and the public in preserving the confidentiality of journalists' sources, disclosure may be ordered only upon a clear and specific showing that the information is: highly material and relevant, necessary or critical to the maintenance of the claim, and not obtainable from other available sources.

In re Petroleum Prods. Antitrust Litig., 680 F.2d 5, 7 (2d Cir. 1982); see also Gonzales, 194 F.3d at 33.[5] "This demanding burden has been imposed by the courts to reflect a paramount public interest in the maintenance of a vigorous, aggressive and independent press capable of

---

[4] While the source of this privilege – the First Amendment, federal common law, or both – is the subject of some debate, see Schiller, 245 F.R.D. at 118; Gonzales, 194 F.3d at 35 n.6, its existence in this Circuit is not.

[5] This test is identical to that applied to non-confidential information under the Shield Law. See N.Y. Civ. Rts. L. § 79-h(c); see Gonzales, 194 F.3d at 34. It is also identical to the test applied to the privilege available to all journalistic information under Article I, § 8 of the New York constitution. See O'Neill v. Oakgrove Constr., Inc., 71 N.Y.2d 521, 527, 528 N.Y.S.2d 1, 3 (1988).

5

participating in robust, unfettered debate over controversial matters." United States v. Burke, 700 F.2d 70, 77 (2d Cir. 1983) (internal quotation omitted). The tripartite formula represents a "stringent test" that plaintiff must meet in order to be entitled to the information she seeks. See Persky v. Yeshiva Univ., No. 01 Civ. 5278, 2002 WL 31769704, at *3 (S.D.N.Y. Dec. 10, 2002).

Mr. Bandler submits that plaintiff cannot possibly make the required showing. First, plaintiff must offer something more than mere surmise – i.e., actually evidence – to support her claim that Mr. Bandler was fed information by defendants as part of a scheme to harass or humiliate her. As stated by the Second Circuit,

> The necessity for confidentiality, essential to fulfillment of the pivotal function of reporters to collect information for public dissemination, cannot be overcome simply by suggesting-with no basis to support the assertion-that the reporter may unknowingly have been used by those sources in their illegal activities.

Petroleum Prods., 680 F.2d at 8 (vacating contempt citation and affirming privilege due to, inter alia, the "complete failure . . . to present any evidence" that the journalist had been used by defendants to disseminate information).

Even if plaintiff could overcome this initial hurdle, as previously discussed, the identity of Mr. Bandler's source has only the most marginal relevance, if any, to plaintiff's claims, which focus overwhelmingly on the conduct of the police during their detention of Ms. Pane and the alleged sexual encounter with Officer Ward the following day. In addition, the identity of Mr. Bandler's source is certainly not critical or necessary to the maintenance of plaintiff's claims. To meet this prong, plaintiff must show that "the claim or which the information is to be used virtually rises or falls with the admission or exclusion of the proffered evidence." In re Application to Quash, 79 F.3d at 351. It seems clear that none of plaintiff's claims turn so

6

critically upon the identity of the source of Mr. Bandler's reporting (or that of any media, for that matter).

Even in the unlikely event that plaintiff could make a clear and specific showing that her claims are utterly dependent upon determining the identity of Mr. Bandler's confidential source, she nevertheless must also demonstrate that she "has exhausted all other available non-privileged sources for the information," In re Pan Am Corp., 161 B.R. 577, 585 (S.D.N.Y. 1993), a showing that again she is almost certainly unable to make. Due to the important press freedoms involved, courts are quite strict about enforcing this requirement. For example, the Second Circuit held in Petroleum Products that this exhaustion requirement had not been met despite the taking of "hundreds of depositions," 680 F.2d at 8-9, and courts in this circuit are routinely unimpressed by a party who takes a few depositions and then proclaims him or herself done, see, e.g., Persky, 2002 WL 31769704, at *4 (three depositions and informal questioning of three other witnesses); Pan Am, 161 B.R. at 585 (two depositions insufficient under the circumstances, noting that plaintiff "has not even worked up a sweat, much less exhausted itself"). In Zerilli v. Smith, 656 F.2d 705 (D.C. Cir. 1981), a case quite similar to this one in that the plaintiff there alleged that Department of Justice employees had deliberately leaked information to the press for harassment purposes, the D.C. Circuit held that at a minimum the plaintiff was required to depose those DOJ individuals with knowledge of the underlying information and suggested that as many as 60 depositions might be reasonable to demonstrate exhaustion. Id. at 714-15 & n.53.

Here, at an absolute minimum all of the defendants in this case must first be deposed as to whether they conveyed any information about the underlying events to the media. Moreover, obviously there are any number of persons within the Greenburgh Police Department and the

Westchester District Attorney's Office with knowledge of the facts of this case who could have communicated with the press; plaintiff must attempt to identify such persons and then demonstrate why discovery from such persons is unavailable. See Persky, 2002 WL 31769704, at *4; Zerilli, 656 F.2d at 715. Finally, Mr. Bandler is aware from reviewing the docket in this matter that defendants have sought the deposition of Tony Castro, plaintiff's former attorney, and have submitted evidence suggesting that Mr. Castro had extensive contact with the media himself. Certainly, Mr. Bandler's privilege cannot be overcome until that deposition has been conducted.

Undoubtedly, there are other avenues of which Mr. Bandler is unaware. Ultimately, however, it is not the duty of Mr. Bandler, or even this Court, to formulate a discovery strategy for plaintiff. Rather, it is plaintiff's burden to make the "clear and specific showing" of exhaustion required to overcome the privilege. See Persky, 2002 WL 31769704, at *4. Until and unless she does so, the subpoena cannot be enforced.

## CONCLUSION

Under either New York or federal law, the identity of Mr. Bandler's confidential source and the substance of any conversations with that source are clearly privileged. Accordingly, the Court is required to quash the subpoena issued by plaintiff seeking such information. See Fed. R. Civ. P. 45(c)(3)(A)(iii) ("On timely motion, the issuing court must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies.") (emphasis added).

8

Dated: New York, New York
February 13, 2008

                        SATTERLEE STEPHENS BURKE & BURKE LLP

                        By:_____/s/_____
                            Mark A. Fowler (MF-4605)
                            Glenn C. Edwards (GE-0696)
                        Attorneys for Non-Party Jonathan Bandler
                        230 Park Avenue
                        New York, New York 10169
                        (212) 818-9200