UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| GINA ANNE NOEL PANE,<br>　　　　　　*Plaintiff*,<br>　- against -<br><br>THE TOWN OF GREENBURGH, JOHN KAPICA, in his capacity as CHIEF OF THE GREENBURGH NEW YORK POLICE DEPARTMENT, ERIK WARD, POLICE OFFICER MICHAEL MUESSER, SERGEANT ROBERT GRAMAGLIA, SERGEANT FRANCIS PUMILLO, DETECTIVE PAUL FERTIG, JOHN DOE POLICE OFFICERS 1 - 10, SO NAMED AS THEIR IDENTITIES HAVE YET TO BE ESTABLISHED.<br>　　　　　　*Defendants*. | Civil Action Number:<br>07 CV 3216 (WP4) (LMS)<br><br>AFFIRMATION IN OPPOSITION TO NON-PARTY JONATHAN BANDLER'S MOTION TO QUASH AND/OR MODIFY A SUBPOENA |

---

RAVI BATRA, being duly sworn, deposes and says:

1.　I am an attorney duly licensed to practice law in the Southern District of New York, and in all Courts of the State of New York. I am the principal of The Law Firm of Ravi Batra, P.C., co-counsel for plaintiff Gina Anne Noel Pane in the above entitled action.

2.　I make this Affirmation in Opposition to the Motion of non-party Jonathan Bandler, seeking to quash and/or modify a subpoena on grounds, *inter alia*, of journalist privilege. A copy of the subpoena, its annexed "Schedule A,"

1

and the complaint in the instant matter, which was annexed to the subpoena as "Exhibit 1," are annexed to non-party Jonathan Bandler's moving papers as Exhibit B.

3. Non-party Bandler has failed to meet his burden, as movant, of establishing that the information sought by the plaintiff is privileged. Under these circumstance, Mr. Bandler's motion must be denied in its entirety. See e.g. Jones v. Hirschfeld, 219 F.R.D. 71 (S.D.N.Y. 2003) (Gorenstein, M.J.).

4. The plaintiff seeks damages in a 42 U.S.C.1983 action, with pendent state law claims, against the Town of Greenburgh, New York, and numerous members of its police department, for gross violations of her civil rights, under color of law, which have grievously harmed her. In essence, the plaintiff was subjected to an unlawful arrest and detention, and while she was in police custody, members of the Greenburgh Police Department found items maintained in a car used by the plaintiff which revealed her involvement in domination, and her lawful part time vocation as a dominatrix. Thereafter, the plaintiff was sexually harassed and maligned by Greenburgh police officials, including defendant Erik Ward, who convinced the plaintiff that if she provided information about drug dealing, and performed sexual fetish behavior for him, he would intervene to ensure the plaintiff received beneficial law enforcement treatment.

5. The plaintiff filed official confidential complaints with the Greenburgh police department, and the Westchester District Attorney's Office. Outside of her attorneys, and in official proceedings, the only people that the plaintiff discussed the matter with were the police and prosecutors involved in taking and following up on her complaint, as well as her parents. Thus, the universe of people who had access to the fact that the plaintiff had filed an internal affairs complaint would have been limited to a highly restricted grouping within the Greenburgh Police Department. The same holds true for the plaintiff's complaint with the Public Integrity bureau of the Westchester County District Attorney's Office.

6. Notwithstanding the confidential and embarrassing nature of the plaintiff's internal complaints, in a malicious attempt to intimidate the plaintiff, while simultaneously seeking to discredit her, somebody with access to this information confidentially provided to the police and prosecutors "leaked" it to the media. The source of that information, whether directly, or through a third party intermediary, was necessarily someone with access to the confidential complaint. There is simply no other possibility. Moreover, we respectfully submit that the divulging of confidential materials outside the scope of the investigation was, at

the very least, a misdemeanor under New York law, to wit: Official Misconduct, in violation of Penal Law § 195.00.[1]

7. Critically, since this action was commenced the plaintiff has asserted that one of the means the defendants used to harm her was improper leaks to the media designed to bring undue attention to the plaintiff (Ver. Comp. ¶¶ 4, 74). In any event, it is beyond cavil that but for the defendants' official misconduct, no media blaze would have been lit to burn Gina and her future, as she, like all others normally accused would have at best made the "police blotter." Thus, this has always been part of the plaintiff's proof of the defendants malice and a basis for the damages she seeks.

8. During a telephone conversation on or about April 6, 2006, at approximately 4:27 P.M., non-party Bandler informed me that on or about February 1, 2006 to February 2, 2006, an as yet unidentified source contacted

---

[1] Penal Law § 195.00 provides that

> A public servant is guilty of official misconduct when, with intent to obtain a benefit or deprive another person of a benefit:
>
> 1. He commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized; or
>
> 2. He knowingly refrains from performing a duty which is imposed upon him by law or is clearly inherent in the nature of his office.

Bandler and told him about the arrest of and subsequent complaint by the "dominatrix." Mr. Bandler told me that he knew who the source of the information was; however, he was not willing to disclose same to me. Moreover, Bandler further informed me that it was these communications that resulted in *The Journal News'* initial publication of a story by him on February 3, 2006 which was, in part, about the plaintiff.

9. Similarly, at or about the same time, the News12 Westchester broadcast news cable television channel received information about the arrest of and subsequent complaint by the "dominatrix," causing that TV station to run their initial story about the plaintiff on February 2, 2006.

10. These communications were made and received by the media more than a week after Gina's police contact and were thus "past history" devoid of any valid claim of newsworthiness. Moreover, the factual circumstances of Gina's arrest, albeit completely lacking in propriety, were devoid of any connection to "domination." Nevertheless, the focus of the media attention was Gina's part time vocation as a dominatrix, and a media frenzy focusing on Gina began. It is not lost on me that the search warrant was issued 3 days after Gina's complaint to the District Attorney's Office and curiously, executed 1 day later on January 31, 2006, and a member of the team that executed same was a miscreant who had

participated in violating Gina. Is it any wonder that Erik Ward, being "tipped off" got rid of critical evidence of his fetish-history stored within his home computer.

11. Coverage by major television and radio stations, as well as tabloid newspapers soon followed, causing Gina to literally run from the cameras out of fear for the destruction of a future career on Wall Street, as well as to contemplate not going forward with her complaint against the officers whose behavior was laden with misconduct. Notably, the cameras of News 12 Westchester captured the image of Gina running away in panic - forever memorializing the horrendous impact upon her.

12. As a result of the negative media attention, which given internet technology remains available in perpetuity, Gina, the holder of a Bachelors Degree with Honors in Economics, is still unable to obtain employment in the financial sector. Necessary background checks performed by prospective employers such as brokerages and hedge funds reveal extensive mention of Gina's police contact, her trumped up arrest, false claims of driving while impaired by drugs, and directly link her to "domination."

13. The plaintiff has been significantly harmed by the exposure of confidential facts about her life, in concert with simultaneously published misstatements of fact. For example, the substance of the media reports were that

the plaintiff was a dominatrix who was driving while impaired by drugs. Thus, notwithstanding that the plaintiff's work in "domination" was irrelevant to the fabricated charges of impaired driving, and the criminal charges have since been terminated favorably to the plaintiff, the published media accounts remain available for all the world to see. Thus, the defendants, and/or their agents, in feeding what was perceived as salacious information about the plaintiff to the print and broadcast media, were able to blanket the Tri-State area with false and harmful information under a perceived "cloak of confidentiality."

14. Mr. Bandler's suggestion that the identity of his source is "simply not relevant, or at best marginally relevant, to the civil rights claims made by plaintiff" wholly ignores the totality of facts asserted in the complaint. Moreover, along with the subpoena, Mr. Bandler was provided a copy of the complaint, and was directed to the specific provisions which deal with media involvement. It bears noting that Mr. Bandler is actually named in the complaint, and his involvement is described therein as well (Ver. Comp. ¶¶ 4, 74). Indeed, the required disclosure by New York Times reporter, Judith Miller, in the "Scooter Libby case" comes to mind.

15. The identity of Mr. Bandler's source(s) are "highly material and relevant;" "necessary or critical to the maintenance of the claim;" and "not

obtainable from other available sources." Thus, even if this Court were to find that the source(s) were truly confidential, disclosure by Mr. Bandler is appropriate. In re Petroleum Products Antitrust Litigation, 680 F.2d 5 (2nd Cir. 1982). Furthermore, as non-party Bandler has in no way established that his source(s) are truly confidential, disclosure is appropriate as the "the materials at issue are of likely relevance to a significant issue in the case, and are not reasonably obtainable from other available sources." Gonzales v. National Broadcasting Co., Inc., 194 F.3d 29 (2nd Cir. 1999).

16. That the bulk of the ongoing and continuous damages to the plaintiff have been, and continue to be caused by mass dissemination of illicitly conveyed confidential information by the media, it is clear that such information is "highly material and relevant" as well as "necessary or critical to the maintenance of the claim." Furthermore, apart from Mr. Bandler, there is no disinterested witness who could provide an answer to the question: "who leaked the information?" Moreover, apart from Mr. Bandler, nobody can, with certainty, testify that they are the initial source. Only Mr. Bandler knows who was **first to leak** the information to him. Therefore, the information sought is "not obtainable from other available sources." As he, unlike News 12, admitted to me during our April 6, 2006 conversation that he knew the identity of his source.

17.    Furthermore, the fact pattern in <u>Zerilli v. Smith</u>, 656 F.2d 705 (D.C. Cir. 1981), cited by Bandler, is not "quite similar" as Bandler asserts (Memo of Law at p. 7). In <u>Zerilli</u>, the Court dealt with the leaking of actual wiretap logs - not merely information. That physical evidence was transferred to the media clearly distinguishes <u>Zerelli</u> from the instant matter. While Mr. Bandler may reveal that he was provided copies of the plaintiff's confidential reports, that is an open question. In <u>Zerelli</u>, it was clear that sealed logs had been shared with the media. In the instant matter, the information may have been merely statements to Mr. Bandler. Furthermore, the cause of action in <u>Zerelli</u> was a defamation claim - not a civil rights action where the media was used as a tool by parties outside of the media to deliberately damage and intimidate the plaintiff - further evidencing dissimilarity between the instant matter and that considered by the D.C. Circuit.

18.    Furthermore, it is respectfully submitted that in this case, the "not obtainable from other available sources" prong of the <u>Petroleum Products</u> inquiry does not mandate a "fishing expedition" of depositions as suggested by Mr. Bandler - because only Mr. Bandler knows who spurred his writing of the first article. Moreover, to demand wholesale discovery in order to protect a source who has used the media to commit what may be a crime could certainly not be what was anticipated in granting journalists a qualified privilege. Notably, in this

matter, to hold otherwise would be to demand that the entirety of the Greenburgh police department, the entire Public Integrity Bureau of the Westchester District Attorney's Office and any other parties within that agency with access to the plaintiff's complaint, all judges sitting in the Greenburgh Town Justice Court, as well as their confidential staffs and security personnel, be subject to deposition - only to again have to ask Mr. Bandler who the first leak was. Again, only Mr. Bandler knows who <u>first</u> ignited the media fire, thus, apart from him, nobody else can answer the crucial question. So, Mr. Bandler, a reporter who comprehends the awesome power of the First Amendment and is a worthy journalist, cannot deny that he is truly unique - a pool of one - who alone knows the identity of his source, acting minimally, of the defendants' misconduct, and worse, to illegally chill Gina from pursuing her complaint of official police misconduct by burning her and her future in the media blaze.

19. Apart from a self-serving assertion, non-party Bandler has failed to produce a modicum of evidence as to the confidential nature of the source of the information. Rather, Bandler merely declares that "any such contact was with a confidential source" (Bandler Decl. ¶ 6). Moreover, while claiming an expansive privilege, Bandler simply asserts that the subpoena should be quashed because it seeks "testimony or documents that are privileged, including, but not limited to,

the identity of any news source who is not disclosed in the Article" (Bandler Decl. ¶ 7). Non-party Bandler has not established, as he must in his <u>initial</u> moving papers, that the source provided the information only after seeking and being promised confidentiality. Therefore, it is respectfully submitted that such naked claims are wholly insufficient to meet the non-party movant's heavy burden of persuasion. Moreover, even if Bandler were able to establish that there was a true confidential nature to the information source, the nature of the plaintiff's need for the information would overcome any qualified privilege attached thereto.

20.    Moreover, falling into a trap set by the defendants, Bandler incorrectly suggests that plaintiff's current co-counsel Tony Castro is "plaintiff's former attorney" (Memo of Law p. 8). Moreover, following the defendants' blind lead, Bandler, inferring that Tony Castro may be his "source," disingenuously asserts that Tony Castro must be deposed before a deposition of Bandler can be considered (<u>Id</u>.). This is insincerity at its worst, even if advocated by counsel. Appended hereto, and incorporated herein, is an Affidavit of Tony Castro.

21.    Notably, as the annexed affidavit of Tony Castro aptly demonstrates, he is not the source, and in fact frowned upon any media involvement at all. Critically, non-party Bandler's attempt to mislead this Court must not be countenanced. Certainly Bandler knows that Tony Castro did not contact him, and

11

instead he contacted Tony Castro. Moreover, Bandler's inferences are wholly discredited by the very first related article he wrote, and The Journal News published. In this article, annexed to Bandler's papers as Exhibit A, Tony Castro is named by Bandler, who wrote:

> Castro declined to comment about the case, but <u>confirmed</u> that his client had made a complaint and that it was being investigated by town police and Westchester prosecutors.

(Bandler Ex. A, col. 2) (<u>emphasis added</u>). It is thus beyond cavil that Tony Castro is not, and could not be the source. Furthermore, this attempt to misdirect the Court speaks volumes about Bandler's misstatements to the Court, aided by the police defendants' prior improper, but calculated motion to depose Tony Castro so as to escape civil (and possible criminal) liability by inducing a "wild goose chase," despite Rule 11. In that regard, his bald assertion that his source is "confidential" cannot, and must not be taken at face value.

22. Notwithstanding Bandler's protestations to the contrary, the New York State "shield law" is wholly inapplicable to this case. Rather, as this essence of this case is a federal civil rights claim, with related pendent state law claims, the issue of privilege is determined entirely by federal law. <u>von Bulow by Auersperg v. von Bulow</u>, 811 F.2d 136 (2nd Cir. 1987). Under federal law there is no absolute privilege afforded a journalist; rather, if the journalist's sources are truly

confidential, there is a heightened review, which is less stringent if the source is non-confidential. Gonzales v. National Broadcasting Co., Inc., 194 F.3d 29 (2nd Cir. 1999).

23. The basis of Mr. Bandler's challenge to the service of the subpoena is at best questionable (Memo of Law at fn. 2). While it has certainly been held that a subpoena must be served "in hand" upon the named person - this is by no means a federal rule, nor a Second Circuit standard. Rather, there is split authority. However, in both the Southern and Eastern Districts of New York, there is published authority which validates service similar to that permitted by a summons. See e.g. Catskill Development, L.L.C. v. Park Place Entertainment Corp., 206 F.R.D. 78 (S.D.N.Y. 2002) (McMahon, J); King v. Crown Plastering Corp., 170 F.R.D. 355 (E.D.N.Y. 1997) (Pohorelsky, M.J.).

24. In an effort to minimize additional consumption of scarce Judicial resources, I have agreed to News 12's attorney Cameron A. Stracher, Esq.'s desire to await the Court's decision and orders for the current two motions. Appended hereto as Exhibit 1 is our letter agreement.

25. As the non-party movant has not met his burden of establishing confidentiality, and even if confidential the plaintiff has demonstrated a need to

overcome the qualified privilege, non-party movant Bandler's motion to quash and/or modify should be denied in its entirety.

WHEREFORE, Jonathan Bandler's motion to quash and/or modify the subpoena issued to him should be denied in its entirety and he should be compelled to testify at a deposition and identify the source of his information.

Dated: New York, New York
       February 20, 2008

                              Respectfully submitted,
                              THE LAW FIRM OF RAVI BATRA, P.C.
                              *Co-Counsel for Plaintiff*

                              Ravi Batra, Esq. (RB 4299)
                              Todd B. Sherman, Esq. (TS 4031)
                              The Batra Building
                              142 Lexington Avenue
                              New York, New York 10016
                              (212) 545-1993
                              E-Mail: ravibatralaw@aol.com

Antonio D. Castro, Esq. (AC 0894)
*Co-Counsel for Plaintiff*
211 South Ridge Street
Rye Brook, NY 10573
(914) 939-0002

To:
Mark A. Fowler, Esq. (Via facsimile and ECF)
Satterlee Stephens Burke & Burke LLP
*Attorneys for Non-Party Jonathan Bandler*
230 Park Avenue
New York, NY 10169-0079
(212) 818-9200

Thomas J. Troetti, Esq. (Via ECF)
*Attorney for defendants Muesser, Gramaglia,*
*Pumillo, Fertig and John Does 1-10*
305 Old Tarrytown Road
White Plains, NY 10603
(914) 946-1875

Brian D. Murphy, Esq. (Via ECF)
Stecich Murphy & Lammers, LLP
*Attorneys for defendants Town of Greenburgh and John Kapica*
828 South Broadway, Suite 201
Tarrytown, NY 10591-6650
(914) 674-4100

Andrew C. Quinn, Esq. (Via ECF)
Quinn & Mellea, L.L.P.
*Attorneys for defendant Erik Ward*
Crosswest Office Center
399 Knolwood Road, Suite 220
White Plains, NY 10603
(914) 997-0555

Cameron A. Stracher, Esq. (Courtesy Copy) (Via U.S. Mail)
*Attorney for News 12 Westchester*
57 Worth Street
New York, NY 10013
(917) 501-6202

\pane.696\021908BandlerAffinOp

Docket No.   07 CV 3216 (WP4) (LMS)

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

GINA ANNE NOEL PANE,
*Plaintiff*,

- against -

THE TOWN OF GREENBURGH,
JOHN KAPICA, in his capacity as CHIEF OF THE GREENBURGH
NEW YORK POLICE DEPARTMENT, ERIK WARD, POLICE OFFICER
MICHAEL MUESSER, SERGEANT ROBERT GRAMAGLIA, SERGEANT
FRANCIS PUMILLO, DETECTIVE PAUL FERTIG,
JOHN DOE POLICE OFFICERS 1 - 10, SO NAMED AS THEIR
IDENTITIES HAVE YET TO BE ESTABLISHED.
*Defendants*.

## AFFIRMATION IN OPPOSITION
## TO NON-PARTY JONATHAN BANDLER'S
## MOTION TO QUASH AND/OR MODIFY A SUBPOENA

THE LAW FIRM OF RAVI BATRA, P.C.
*Co-Counsel for Plaintiff*
The Batra Building
142 Lexington Avenue
New York, NY 10016
(212)545-1993
\pane.696\021908BandlerAffinOp