UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **GINA ANNE NOEL PANE,**<br>*Plaintiff,*<br>- against -<br><br>**THE TOWN OF GREENBURGH, JOHN KAPICA, in his capacity as CHIEF OF THE GREENBURGH NEW YORK POLICE DEPARTMENT, ERIK WARD, POLICE OFFICER MICHAEL MUESSER, SERGEANT ROBERT GRAMAGLIA, SERGEANT FRANCIS PUMILLO, DETECTIVE PAUL FERTIG, JOHN DOE POLICE OFFICERS 1 - 10, SO NAMED AS THEIR IDENTITIES HAVE YET TO BE ESTABLISHED.**<br>*Defendants.* | Civil Action Number:<br>07 CV 3216 (WP4) (LMS)<br><br>AFFIDAVIT OF PLAINTIFF'S ATTORNEY ANTONIO D. CASTRO, IN OPPOSITION TO DEFENDANTS' ORDER TO SHOW CAUSE SEEKING TO DEPOSE ME AND IN OPPOSITION TO THE MOTION TO QUASH OR MODIFY A SUBPOENA ISSUED TO REPORTER JONATHAN BANDLER |

STATE OF NEW YORK    : )
                     : )
COUNTY OF WESTCHESTER:)ss.

      ANTONIO D. CASTRO, being duly sworn, hereby declares the following to be true under penalties of perjury of the laws of the United States of America and the State of New York:

      1.    I am an attorney, duly licensed to practice law in the Southern District of New York, and in all Courts of the State of New York. My given name is Antonio, and I am admitted to all Courts under that, my proper name; however, I am commonly known, and frequently referred to, as "Tony."

2. I submit this Affidavit in opposition to the defendants' Order to Show Cause seeking to unnecessarily and intrusively depose me in the above captioned matter.

3. I further submit this Affidavit in opposition to non-party Jonathan Bandler's motion to quash and/or modify a subpoena seeking to depose him and have him produce documentary and physical evidence highly relevant to the plaintiff's prosecution of this case.

4. I currently represent the plaintiff Gina Anne Noel Pane, and have continuously represented her since in or about January 2006. My representation of the plaintiff began with now dismissed criminal charges arising from her arrest on January 21, 2006, and continues to date with the above captioned case.

5. I have read the Order to Show Cause issued by this Court as well as the Affirmation of Thomas Troetti, Esq. and the memorandum of law submitted in support. I have also read the Notice of Motion, Declaration of Jonathan Bandler, and Memorandum of Law submitted in support of non-party Bandler's motion to quash and/or modify.

6. Notwithstanding my appearances in the District Court in the instant matter, nowhere in those papers do the moving defendants acknowledge that I continue to represent the plaintiff - although they know that I do. Instead, the defendants' disingenuously assert that I am merely a "non-party witness . . . who formerly represented the plaintiff in the defense of criminal charges which arose out of her arrest by the Greenburgh Police Department on January 21, 2006" (Def. Aff. p. 1).

7. In her complaint, the filing of which commenced the instant proceedings, the plaintiff asserted that

> Upon information and belief, on or about February 2, 2006, an unknown source contacted Jonathan Bandler, a reporter at The Journal News by telephone and told the reporter about the arrest of the "dominatrix." Similarly, Local News12 TV received one or more anonymous calls on February 2, 2006, causing that TV station to run a story on the "dominatrix" on February 2, 2006. This was more than a week since

2

> Ms. Pane's police contact and thus devoid of any valid claim of newsworthiness, yet a media frenzy focusing on Ms. Pane began. Coverage by major television and radio stations soon followed, causing Gina to literally run out of fear from the camera as captured by News12, fear for the destruction of a future career on Wall Street, as well as contemplate not going forward with her complaint against the officers who acted illegally and dishonorably. Upon information and belief, these media reports were designed as witness-intimidation and resulted in aggravating the injury to Gina Pane.

(Comp. ¶ 74). Thus, the source(s) of the media attention to the plaintiff and its impact upon her are highly relevant to the instant matter.

8. The defendants' purportedly seek to depose me in an effort to determine if I was the source of these stories, to wit: "it appears that Mr. Castro was the source of the very information which later publicized the plaintiff's profession as a dominatrix. . ." (Def. Aff. p. 6).

9. I was not the source of the information provided to *The Journal News*, News 12, or any other media entity.

10. Outside of those involved in legal representation of Gina Pane, the only entities I ever initiated contact with about the plaintiff's arrest and subsequent mistreatment at the hands of the police, were the Westchester County District Attorney's Office and the Greenburgh Police Department.

11. I first contacted the Westchester County District Attorney's Office on or about January 27, 2006, before appearing in Court on behalf of Gina. At that time I spoke with Assistant District Attorney Vincent O'Connell, and informed him, in substance, that Gina Pane had allegations of police misconduct that she wished to confidentially report. When I appeared in Court, Mr. O'Connell informed me that he had arranged for me to meet with Greenburgh Police internal investigators, including Lieutenant LoGuidice, after the call of the calendar.

12. Upon completion of the Court proceedings on Friday January 27, 2006, I accompanied Gina, and her mother, to Greenburgh police headquarters and met with investigators, including Lieutenant LoGuidice. At that time, Gina conveyed the allegations that she has consistently raised since January 2006 to these investigators.

13. During Gina's lengthy debriefing by investigators, including LoGuidice, I specifically informed the police personnel that I did not wish any of the information being conveyed by Gina to be "leaked" to anybody, including the media. Furthermore, I specifically stressed that publicizing the allegations had the potential to embarrass and cause harm to many people, including Gina and her family, the officers involved and their families, and the Greenburgh Police Department as a whole.

14. After the lengthy debriefing, LoGiudice requested permission to take Gina to the location where she said that defendant Erik Ward had defecated in the woods. I authorized this limited contact. I later learned that subsequent to taking Gina to the woods, LoGiudice took her to the Westchester District Attorney's Office, without my knowledge or consent as her counsel, where without my knowledge, and outside of my presence, Gina was subjected to a lengthy interrogation about her allegations.

15. The following Thursday, February 2, 2006, I was contacted by telephone at my law office by Jonathan Bandler, a reporter with *The Journal News*. Mr. Bandler informed me that he possessed information that my client had been arrested for driving while impaired and possession of marijuana, that she was a dominatrix. Hoping to prevent publicizing Gina's plight, I told Mr. Bandler that the story was not newsworthy, hoping that no story would be published. However, that was not to be , and I then proceeded to defend Gina and confirmed that she made a complaint about police misconduct.

16. Shortly thereafter I received a similar call from a reporter with the News 12 Westchester cable news network. This reporter possessed similar information as did Mr. Bandler. Much like my conversation with Mr. Bandler, I similarly sought to dissuade News 12 from running a story.

17. Later on February 2, 2006, I received telephone calls from seven additional broadcast news networks seeking comment about Gina Pane. The only major network not to call on that day was NBC, who called the next day.

18. At or about Midnight on February 2, 2006 going into February 3, 2006, a telephone call was made to my home by a reporter from the *New York Post*. This phone call was not answered, and instead a message was left on my home answering machine.

19. I did not initiate any of these communications with the media; rather, I merely responded to some of them. Furthermore, any information that I shared with the media was only to confirm or deny information that they already claimed to possess. Moreover, at no time did I provide the media with any data that could even remotely be considered privileged.

20. During my initial communications with the media I consistently tried to dissuade them from publicizing Gina's arrest, prosecution, her complaints to investigators and prosecutors, and her involvement in "domination." Once stories began being published and broadcast, it became clear that the media was not dissuaded, moreover representatives of media outlets continued to contact me.

21. I believed then, and now, that I was obligated to protect Gina's image in the media. Because the media continued to view Gina's case as newsworthy, my subsequent communications with journalists were primarily designed to educate them, and through them the public, as to the legality of "domination" generally. Most of the reporters who contacted me equated "domination," which is legal, with prostitution, which is clearly not. My goal was to inform the inquiring media of these crucial differences while attempting to protect Gina in the pool of public opinion that she was unwillingly pushed into.

22. At no time did I ever initially inform, or suggest, to any media outlet, that Gina was a dominatrix. Rather, each media source was armed with that information prior to their initial contact with me. Moreover, based upon the detailed information possessed by these journalists, it was apparent that notwithstanding my requests to the contrary, there was a "leak" to the media from within the limited universe of people who were privy to Gina's confidential

reporting to the Greenburgh Police Department and the Westchester County District Attorney's Office.

23. Notably, Mr. Bandler seeks to use the defendants' improper attempt to impinge on the fiduciary relationship I have with the plaintiff as a "red herring" shield to avoid his own testimony. In his papers, non-party Bandler asserts that he is

> aware from reviewing the docket in this matter that defendants have sought the deposition of Tony Castro, plaintiff's former attorney, and have submitted evidence suggesting that Mr. Castro had extensive contact with the media himself

(Bandler Memo of Law p. 8). Thus, knowing far well that I was not his source, Mr. Bandler disingenuously leaves open the possibility that I could have been. Furthermore, Mr. Bandler and his attorneys have fallen into the trap of misleading facts set by the moving defendants in that he refers to me as "plaintiff's former attorney."

24. I did not want media attention paid to the criminal case underlying the instant matter, and never sought same. Initially, as I immediately disclosed to Lieutenant LoGiudice, the subject matter of the complaint is embarrassing to Gina and her family, and holds the potential to embarrass members of law enforcement. Furthermore, on a very personal level, as inexplicably noted by Mr. Troetti in his Affirmation in support of the moving defendants Order to Show Cause, I have twice been a candidate for District Attorney in Westchester County - and have not ruled out the possibility of again running for public office. I worked very hard to obtain the support and endorsements of many law enforcement organizations. Moreover, during my lengthy career as a prosecutor I developed many long standing relationships with members of the law enforcement community. It was certainly not my intent to bring undue attention to my client in particular, and to police officers in general.

25. Notably, the moving defendants further claim that they wish to depose me based upon my invoice rendered to Gina Pane for legal services rendered by me on her behalf. This request appears to be a "back door" attempt to subject me to questioning about privileged matters, and my work product, all of which are legally and ethically exempt from disclosure.

26. Based upon a transcript of the deposition of Gina's mother Adelle Pane, I learned that the defendants' had obtained an copy of the invoice I rendered to Gina Pane that was not redacted (Adelle Pane Dep. Tr. p. 209, line 5 to p. 211, line 2). This both surprised and disturbed me, as my invoice included not simply time spent, but also a description of the activities performed. I believe that such descriptions constitute both privileged communications, and attorney work product.

27. I have not been paid the entirety of amount receivable pursuant to the invoice I submitted to Gina Pane as regards time spent while defending the criminal action against her. Rather, I have only been paid $6,000.00, which does not represent any time I spent representing Gina's interests with the media. Thus, the amount received so far does not include payment for the time I spent dealing with the media on her behalf.

28. Based upon the transcript of Adelle Pane, I am aware that she testified, under questioning by Mr. Troetti, the moving defendants' attorney, that only portions of my invoice that were paid thus far were directly related to my representation of Gina to defeat the criminal charges (Adelle Pane Tr. p. 452, line 3 - p. 453, line 16). Thus, notwithstanding Mr. Troetti's spurious references to those portions of my invoice that deal with time spent on media matters (Def. Memo of Law pp. 5-6), prior to submitting the Order to Show Cause, the defendants already knew that I had not been paid for that time!

29. The defendants have already garnered the information they purport to seek about my invoice and the fees I have charged, and collected. The defendants already possess copies of the fronts and backs of the checks that were issued to me by Gina's parents; they already know that my fees were initially paid by Gina's parents; and based upon the transcripts of the depositions conducted of Gina's parents it appears they have been reimbursed by Gina in their entirety (Adelle Pane Dep. Tr. p. 215, lines 1-10; Eugene Pane Dep. Tr. p. 17, line 20 to p. 18, line 7).

30. There is absolutely nothing more that I could add to the calculus of this matter without divulging confidences and strategies. The defendants already have all of the information that they could possibly obtain from me and I believe that any desire to depose me is solely designed to frustrate the attorney/client relationship that has existed between Gina and myself since January 2006.

31. I therefore respectfully request that both the defendants' Order to Show Cause seeking to compel my deposition testimony, and non-party Jonathan Bandler's motion to quash and/or modify a subpoena, which is in part based upon faulty facts proffered by the defendants, be denied in their entirety, with prejudice.

_____
ANTONIO D. CASTRO (AC-0894)

SWORN TO BEFORE ME THIS 20
DAY OF FEBRUARY 2008

_____
NOTARY PUBLIC
STATE OF NEW YORK

JOHN B. COLANGELO
Notary Public, State of New York
No. 4708504
Qualified in Westchester County
Commission Expires July 31, 19__

8