UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GINA ANNE NOEL PANE,

                  Plaintiff,

   -against-

THE TOWN OF GREENBURGH, JOHN KAPICA,
in his capacity as Chief of the Greenburgh Police
Department, ERIK WARD, POLICE OFFICER MICHAEL
MUESSER, SERGEANT ROBERT GRAMAGLIA,
SERGEANT FRANCIS PUMILLO, DETECTIVE PAUL
FERTIG, JOHN DOE POLICE OFFICERS 1-10 so named
as their identities have yet to be established,

                  Defendants.

---

ECF Filed

No. 07 Civ. 3216 (WP4)(LMS)

## REPLY MEMORANDUM OF LAW OF NONPARTY WITNESS JONATHAN BANDLER IN SUPPORT OF HIS MOTION TO QUASH AND/OR MODIFY

SATTERLEE STEPHENS BURKE & BURKE LLP

Mark A. Fowler (MF-4605)
Glenn C. Edwards (GE-0696)
Attorneys for Nonparty Witness Jonathan Bandler
230 Park Avenue, Suite 1130
New York, NY 10169
(212) 818-9200

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT......................................................................................1

ARGUMENT.................................................................................................................3

    I.     MR. BANDLER'S SOURCE WAS CONFIDENTIAL ..........................................3

    II.    NEW YORK'S SHIELD LAW PROVIDES AN ABSOLUTE PRIVILEGE.........4

    III.   PLAINTIFF HAS FAILED TO CARRY HER BURDEN TO OVERCOME
          EVEN THE QUALIFIED FEDERAL PRIVILEGE...............................................7

    IV.   PLAINTIFF HAS FAILED TO PROVE PROPER SERVICE..............................9

CONCLUSION...........................................................................................................10

724981_2

Nonparty witness Jonathan Bandler respectfully submits this reply memorandum of law in further support of his motion to quash and/or modify the subpoena dated January 24, 2008 and served upon him by plaintiff Gina Pane.

## PRELIMINARY STATEMENT

In his opening papers, Mr. Bandler demonstrated that the subpoena issued by plaintiff seeks to uncover information imparted to him in the course of newsgathering and under the cloak of confidence, a conclusion now further bolstered by the additional sworn declaration he has submitted herewith. He also demonstrated that this confidential relationship was entitled to absolute protection under New York's Shield Law or, in the alternative, that this information was subject to a qualified privilege under federal law that plaintiff was highly unlikely to overcome.

Given the opportunity to proffer evidence to surmount that privilege, plaintiff has come up woefully short – indeed, she has offered no evidence of which this Court may properly take notice. She has not made a showing, much less a clear and specific one, of even the most minimal relevance of the information sought to her claims, nor that such claims "virtually rise or fall" with the outcome of this motion. Most glaringly, however, plaintiff has made no attempt whatsoever to obtain the information she seeks from nonprivileged sources, despite the fact that, by her own admission, the universe of persons likely to have had access to the information is tightly circumscribed. Such patent indolence is a far cry from the exhaustion that federal courts demand before they will even entertain invasion of a reporter's confidential source relationship.

Plaintiff's behavior in subpoenaing Mr. Bandler, in fact, is a textbook example of why the journalist's privilege was created in the first place. While asserting that Mr. Bandler is "truly unique" in his knowledge of the identity of his source, plaintiff plainly knows this to be false – the source, at least, also knows. What plaintiff really means is: Mr. Bandler is the easiest source

of the information she seeks. Indeed, in any matter of public controversy it will almost always be true that journalists covering the matter will be the most comprehensive source of information not easily obtainable elsewhere, particularly because of their access to confidential sources unwilling to divulge their information to other persons. Yet, in addition to the fact that routine breaches of such confidentiality would surely eliminate the most crucial sources of such information, even where (unlike here) confidentiality is not at issue, the press simply could not function if it were routinely subject to discovery. As stated by the Second Circuit,

> If the parties to any lawsuit were free to subpoena the press at will, it would likely become standard operating procedure for those litigating against an entity that had been the subject of press attention to sift through press files in search of information supporting their claims. The resulting wholesale exposure of press files to litigant scrutiny would burden the press with heavy costs of subpoena compliance, and could otherwise impair its ability to perform its duties-particularly if potential sources were deterred from speaking to the press, or insisted on remaining anonymous, because of the likelihood that they would be sucked into litigation. Incentives would also arise for press entities to clean out files containing potentially valuable information lest they incur substantial costs in the event of future subpoenas. And permitting litigants unrestricted, court-enforced access to journalistic resources would risk the symbolic harm of making journalists appear to be an investigative arm of the judicial system, the government, or private parties

Gonzales v. Nat'l Broad. Co., 194 F.3d 29, 35 (2d Cir. 1998).[1]  As both state and federal law

recognizes, the protections afforded by the journalist's privilege are critical to the continued

---

[1] Similar concerns were stated by the New York Court of Appeals in finding a constitutional privilege for nonconfidential material:

> The ability of the press freely to collect and edit news, unhampered by repeated demands for its resource materials, requires more protection than that afforded by the disclosure statute.  The autonomy of the press would be jeopardized if resort to its resource materials, by litigants seeking to utilize the newsgathering efforts of journalists for their private purposes, were routinely permitted.  Moreover, because journalists typically gather information about accidents, crimes, and other matters of special interest that often give rise to litigation, attempts to obtain evidence by subjecting the press to discovery as a nonparty would be widespread if not restricted.  The practical burdens on time and resources, as well as the consequent diversion of journalistic effort and disruption of newsgathering activity, would be particularly inimical to the vigor of a free press.

O'Neill v. Oakgrove Constr., Inc., 71 N.Y.2d 521, 526-27, 528 N.Y.S.2d 1 (1988).

2

functioning of our press corps, and plaintiff's efforts are a direct assault on those protections. This Court should not lend its support to such an attack. The subpoena attempting to discover the identity of Mr. Bandler's confidential source should be quashed in its entirety.

## ARGUMENT

### I.    MR. BANDLER'S SOURCE WAS CONFIDENTIAL

In his declaration submitted with his motion to quash ("Bandler Decl."), Mr. Bandler clearly asserted that the source whose identity plaintiff seeks to expose made any communications to the reporter in confidence. (Bandler Decl. ¶ 6.) This was not, as plaintiff dismisses it (Pls.' Br. at 5), a "self-serving assertion" but rather the considered judgment of a veteran reporter with 19 years of experience. Certainly, if the journalist's privilege is to have any meaning, the journalist must be able to some extent rest on his assertion of confidentiality without divulging the very information – the source's identity and the substance of the conversation – that the privilege is designed to protect. Nevertheless, in an effort to clear up any doubt Mr. Bandler is herewith submitting a further declaration in which he spells out – to the extent possible without breaching his privilege – the circumstances which led him to the conclusion that his source expected that his or her identity would be kept confidential. (Bandler Reply Decl. ¶¶ 7-8.)

Plaintiff asserts that to demonstrate confidentiality Mr. Bandler is required to show both that "confidentiality was sought by his source" and that "assurances of the same were made." (Pls.' Br. at 5.) While of course such an express agreement would suffice, no such requirement is to be found in the law, nor does the authority cited by plaintiff state otherwise.[2] Rather, it is

---

[2] In <u>Lonegan v. Hasty</u>, No. CV-04-2743, 2008 WL 41445 (E.D.N.Y. Jan. 1, 2008), the court applied the stricter test

3

quite clear under the New York Shield Law that the understanding or expectation of confidentiality may be either express or implied. See In re Pennzoil Co., 108 A.D.2d 666, 666, 485 N.Y.S.2d 533 (1st Dep't 1985).[3]  Under federal law as well, the focus of the courts appears to be on the source and whether he or she had a reasonable expectation of confidentiality. See, e.g., Schiller v. City of New York, 245 F.R.D. 112, 120 n.2 (S.D.N.Y. 2007) (applying lower standard "where the source has no expectation of confidentiality"). An express confidentiality agreement is simply not required. Mr. Bandler has plainly met any burden he may carry to establish confidentiality.

## II.    NEW YORK'S SHIELD LAW PROVIDES AN ABSOLUTE PRIVILEGE

As stated in Mr. Bandler's opening brief, the confidentiality of his source's identity provides an absolute privilege under New York's Shield Law, N.Y. Civ. Rts. L. § 79-h(b). Plaintiff argues that, because there are federal causes of action in this case, New York's privilege is per se inapplicable. (Pls.' Br. at 2-3.) Even the authority cited by plaintiff, however, states what Mr. Bandler noted in his opening brief, namely, that "[w]hen the evidence sought is relevant to both the federal and state claims, . . . the asserted privileges are governed by the principles of federal law. Bayne v. Provost, 359 F. Supp. 2d 234, 238 (N.D.N.Y. 2005) (emphasis added). The evidence for which plaintiff seeks to invade the confidential source relationship simply bears no apparent relevance to the federal claims, and thus New York's

---

for confidential information where "confidentiality was promised to all of the sources," but said nothing about whether such an express promise was required. Id. at *6. Plaintiff's other citation, to Gonzales v. Nat'l Broad. Co., is puzzling as it does not appear the court discussed the standard for confidentiality at all.

[3] See also Andrews v. Andreoli, 92 Misc. 2d 410, 418, 400 N.Y.S.2d 442 (N.Y. Sup. 1977) ("[A]n understanding or agreement of confidentiality may be implied in fact when, from the acts and conduct of the newsman and his informant (i.e., source), or from custom and usage, or from the circumstances surrounding the gathering of the news, it is reasonable to conclude that the principals mutually intended that the identity of the source and the substance of the news or information would be maintained confidential.").

4

privilege should control.

Plaintiff makes no discernible argument in her memorandum of law for why the subpoenaed information is relevant to any of her claims, much less the federal ones, except to say that "as has been established in the annexed affirmation of Ravi Batra, Esq., the materials sought are crucially relevant." (Pls.' Br. at 6.) As an initial matter, Mr. Batra's "affirmation" was neither sworn before a notary nor subscribed under penalty of perjury pursuant to 28 U.S.C. § 1746. Accordingly, nothing in that document is competent evidence before this Court. See Procaccino-Hague v. Boll Filter Corp., No. 303CV1560, 2004 WL 78155, at *2 (D. Conn. Jan. 13, 2004); Rafkind v. Oxford Capital Secs., Inc., No. 92 Civ. 2354, 1997 WL 328067, at *1 (S.D.N.Y. June 16, 1997). Even if it were, its assertions regarding relevance are nothing but counsel's ipse dixit, absolutely devoid of any demonstration of how the identity of Mr. Bandler's source is a "fact that is of consequence to the determination of the action," Fed. R. Evid. 401.

While it is evident that plaintiff's theory is that one of the defendants is Mr. Bandler's source, nowhere does plaintiff state how, even if true, that fact is legally relevant. An assessment of the complaint suggests that plaintiff's federal civil rights claims are based on her treatment by defendants while in custody; there is no apparent relevance of the publicity, which came well after she filed administrative complaints about such treatment, to such claims. Plaintiff also claims that "leaks" set off a media firestorm that ultimately damaged plaintiff's career prospects, but again does not offer up any explanation (much less one supported by authority) of how the disclosure of such information constitutes a cognizable civil rights violation.[4]

---

[4] Apparently desperate to take this case out of the universe of the stringent federal qualified privilege, plaintiff states that the divulging of information to Mr. Bandler was itself a crime. (Pls.' Br. at 3-5.) Plaintiff's assertion is based, first, on the most rank speculation as to what information Mr. Bandler's source divulged – the information in the

5

Indeed, plaintiff utterly fails to acknowledge in her papers that the article which Mr. Bandler wrote – and which, under plaintiff's theory, was triggered by the revelations of the confidential source whose identity she seeks – nowhere mentions either (1) plaintiff's name; or (2) her activities as a dominatrix. (Bandler Reply Decl. ¶ 2.) The article was a straightforward account of the suspension of the street crimes unit of the Greenburgh Police Department – hardly a story "devoid of any valid claim of newsworthiness," as plaintiff would have it. (Pls.' Br. at 5.) Thus, plaintiff fails to demonstrate that there is a probability that Mr. Bandler's source is, in any legally cognizable way, connected to the damages she seeks to prove in this action. Indeed, before issues of privilege even arise, it is plaintiff's burden to prove the relevance of the discovery she seeks, and her failure to do so is itself reason to quash the subpoena.

Because the information sought is not relevant to plaintiff's federal claims, the New York Shield Law should apply. Even, however, if the Shield Law did not apply of its own force, plaintiff has offered no argument as to why the Court should not, for the reasons stated in Mr. Bandler's opening brief (Br. at 4-5), apply it as a matter of comity. Whatever meager relevance plaintiff may have demonstrated in her papers, it is clear that no federal interest will be significantly compromised by application of the Shield Law. Indeed, the protection which a

---

article Mr. Bandler wrote (and which, plaintiff claims, was triggered by the source) reveals nothing that could be deemed confidential. Plaintiff further fails to explain under what basis any information was deemed confidential and subject to criminal penalties for disclosure; the reference to "official misconduct" is, to say the least, a stretch at best. In any case, it should be noted that if a prosecution were to be undertaken for this state law "crime," Mr. Bandler would be <u>absolutely</u> privileged under the Shield Law from revealing his source.

Plaintiff's hyperbole aside, this is simply not a situation where a grand jury investigation is being impeded by the reporter's privilege, and thus <u>New York Times v. Gonzalez</u>, 459 F.3d 160 (2d Cir. 2006), is inapposite. The court's determination in that case turned not only the grand jury's "serious law enforcement concerns" but the possibility that the reporters themselves played a role in a "serious obstruction of justice." <u>Id.</u> at 170. For the same reason, plaintiff's comparisons of herself to Valerie Plame are misplaced. (Batra Aff. ¶ 14.) <u>See</u> In re Grand Jury Subpoena, Judith Miller, 438 F.3d 1141, 1147-49 (D.C. Cir. 2005) (stressing importance of grand jury investigatory powers and distinguishing <u>Zerilli v. Smith</u>, 656 F.2d 705 (D.C. Cir. 1981) as being a civil case).

6

journalist and his source have a right to expect in New York is a policy that is "fully congruent" with federal interests and should therefore be honored.

## III. PLAINTIFF HAS FAILED TO CARRY HER BURDEN TO OVERCOME EVEN THE QUALIFIED FEDERAL PRIVILEGE

Application of the federal qualified privilege rather than the absolute Shield Law privilege still requires quashing of plaintiff's subpoena. First, as already discussed, and her counsel's conclusory (and unsworn) assertions to the contrary notwithstanding, she has not demonstrated that the identity of Mr. Bandler's source is "highly material and relevant" to any of her claims. She certainly has not demonstrated, as she must, that her claims "virtually rise or fall" with that piece of information. See In re Application to Quash Subpoena to Nat'l Broad. Co., 79 F.3d 346, 351 (2d Cir. 1996). And whatever one may say about the vague, unsupported arguments in her brief, "clear and specific" does not describe them.

Most glaring, however, is plaintiff's complete failure to demonstrate that she has exhausted all other available non-privileged sources for the information. The fundamental fallacy of her position is demonstrated by the statement by plaintiff's counsel that "[o]nly Mr. Bandler knows who was **first to leak** the information to him." (Batra Aff. At 8 (emphasis in original).) Quite obviously, this is false: the source knows. And, as plaintiff's entire theory of relevance in the first place is that one of the defendants is the source, then at a minimum the depositions of these defendants must proceed before any thought to invading Mr. Bandler's journalistic privilege can even be entertained.[5]

---

[5] Plaintiff cannot simply assume that the source would perjure him or herself once deposed. See Zerilli, 656 F.2d at 715 (exhaustion cannot be avoided "simply because [plaintiff] feared that deposing [possible sources] would be time-consuming, costly, and unproductive."). Moreover, of course, surely such depositions are going to take place in the ordinary course of this litigation, and thus do not even represent an additional burden to the plaintiff.

7

Moreover, plaintiff herself admits that, beyond the defendants, the set of persons who were privy to the information allegedly leaked to the media is quite small. See Batra Aff. At 3 ("The universe of people who had access to the fact that the plaintiff had filed an internal affairs complaint would have been limited to a highly restricted grouping within the Greenburgh Police Department. The same holds true for the plaintiff's complaint with the Public Integrity bureau of the Westchester County District Attorney's Office."). Yet, plaintiff has offered no evidence that she has taken even one deposition of any of these potential witnesses – much less the tens or even hundreds that courts have suggested might be required depending on the circumstances.[6] (See Br. at 7-8.) She has, in the words of Judge Preska, "not even worked up a sweat, much less exhausted [her]self." In re Pan Am Corp., 161 B.R. 577, 585 (S.D.N.Y. 1993).[7]

Indeed, this complete lack of any attempt to obtain the information from alternative sources – in addition to plaintiff's failure to show its relevance to any significant issue – precludes a finding that plaintiff has overcome even the privilege available for non-confidential

---

[6] Plaintiff's attempt to distinguish Zerilli is not only unpersuasive, but misleading. (Batra Aff. ¶ 17.) Zerilli was not, as Mr. Batra states, a defamation claim; it was an action under the federal Privacy Act and the Fourth Amendment, claiming that DOJ employees had deliberately leaked confidential investigatory information to the press, and in which plaintiffs sought to depose the reporter to whom the information had been divulged. See 656 F.2d at 706-07. The supposed pertinence of the fact that the case involved "wiretap logs – not merely information" is left unexplained by plaintiff's counsel.

[7] With respect to the deposition of Tony Castro, Mr. Bandler nowhere intended to suggest that Mr. Castro was the source whose identity plaintiff seeks. (Mr. Bandler has no intention of pointing the finger or removing suspicion from any individual.) The point in suggesting that his deposition must be taken first is that, according to the defendants, it is at least plausible that Mr. Castro contributed to the media coverage in such a way as to remove the issue from the case entirely. Mr. Bandler expresses no view on whether that is likely, but the exhaustion requirement of the federal privilege demands that such plausible avenues be explored in the first instance.

As for plaintiff's indignance over referring to Mr. Castro as plaintiff's former counsel, the Court's attention is directed to the fact that, until the submission of plaintiff's opposition papers, there was no evidence in the public docket – the only source of information that Mr. Bandler had – of any appearance by Mr. Castro on plaintiff's behalf. His newly acknowledged status as "co-counsel," however, is completely irrelevant to whether his deposition is a necessary element of plaintiff's exhaustion obligation.

8

material.  See Gonzales, 194 F.3d at 36 (must show that materials "are of likely relevance to a significant issue in the case, and are not reasonably obtainable from other sources").

## IV.    PLAINTIFF HAS FAILED TO PROVE PROPER SERVICE

In his opening brief ("Br."), Mr. Bandler pointed out that he had not been properly served with the subpoena – it having not been delivered personally, but merely left at the Journal-News offices – and, therefore, it must be quashed. (Br. at 2 n.2.)  This challenge places upon plaintiff the burden to prove that service was properly effected.  See Johnson v. PetSmart, Inc., No. 6:06-cv-1716, 2007 WL 2852363, at *1-2 (M.D. Fla. Oct. 2, 2007); cf. In re Am. Int'l Group Secs. Litig., 240 F.R.D. 608, 609 (S.D.N.Y. 2007).  Plaintiff has done nothing to carry this burden.

First, plaintiff has not offered any cognizable evidence on the service issue.  As previously discussed, nothing in the Batra Affirmation is competent evidence before this Court. In any case, the only statements from plaintiff regarding how service was effected are not even in Mr. Batra's unsworn affirmation, but in plaintiff's memorandum of law.  (Pls.' Br. at 9-10.) Moreover, not only is plaintiff's counsel not competent to testify as to what the process server did, but such "proof" is plainly inadequate under Rule 45, which states that "proving service, when necessary" requires a "statement . . . certified by the server." Fed. R. Civ. P. 45(b)(4).[8]

Even if the Court were to accept Mr. Batra's unsworn hearsay, service was plainly improper.  Mr. Bandler is aware, as plaintiff suggests, that a few courts have rejected the traditional position that Rule 45 requires personal service.  See Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc., No. 99 Civ 9623, at *1 (S.D.N.Y. May 12, 2006) (describing such courts as a "minority").  As stated in his opening brief, such courts remain in the minority and it is

---

[8] Rule 45 also requires the filing of "a statement showing the date and manner of service and the names of the persons served." Fed. R. Civ. P. 45(b)(4).

respectfully submitted that any change in the longstanding interpretation of Rule 45 should come through the process of amendment to, rather than re-interpretation of, the rule itself.

Regardless, however, those courts to have allowed other forms of service have, as plaintiff correctly notes, "requir[ed] that the subpoena be 'delivered' like a summons." Pls.' Br. at 9-10; Briarpatch, 2006 WL 1311967, at *2. No such service is described by plaintiff, who states that the subpoena was "delivered by process server to [the Journal News] office." (Pls.' Br. at 9.) Delivery to a person's business is not valid service under Fed. R. Civ. P. 4(e)(2), nor is it valid under New York law, which requires followup with a mailed copy to one's home or business, see N.Y. CPLR § 308(2). Plaintiff, however, strenuously objects to any suggestion that the subpoena was, in fact, mailed. (Pls.' Br. at 9.) Thus, even under the standards suggested by plaintiff service was inadequate. See Briarpatch, 2006 WL 1311967, at *2. The subpoena should, accordingly, be quashed for improper service.

## CONCLUSION

For the foregoing reasons, as well as those stated in Mr. Bandler's opening brief, the subpoena to Mr. Bandler should be quashed in its entirety.

Dated: New York, New York
        February 27, 2008

SATTERLEE STEPHENS BURKE & BURKE LLP


By:_____/s/_____
        Mark A. Fowler (MF-4605)
        Glenn C. Edwards (GE-0696)
        Attorneys for Non-Party Jonathan Bandler
        230 Park Avenue
        New York, New York 10169
        (212) 818-9200

10

724981_2