UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **GINA ANNE NOEL PANE,**<br>     *Plaintiff,*<br> - against -<br><br>**THE TOWN OF GREENBURGH, JOHN KAPICA, in his capacity as CHIEF OF THE GREENBURGH NEW YORK POLICE DEPARTMENT, ERIK WARD, POLICE OFFICER MICHAEL MUESSER, SERGEANT ROBERT GRAMAGLIA, SERGEANT FRANCIS PUMILLO, DETECTIVE PAUL FERTIG, JOHN DOE POLICE OFFICERS 1 - 10, SO NAMED AS THEIR IDENTITIES HAVE YET TO BE ESTABLISHED.**<br>                          *Defendants*. | Civil Action Number:<br>07 CV 3216 (WP4) (LMS)<br><br>**AFFIRMATION IN OPPOSITION TO THE TOWN DEFENDANTS' UNTIMELY AFFIRMATION IN SUPPORT OF DEFENDANTS' ORDER TO SHOW CAUSE SEEKING TO DEPOSE PLAINTIFF'S ATTORNEY ANTONIO CASTRO, ESQ.** |

RAVI BATRA, being duly sworn, deposes and says:

1.     I am an attorney duly licensed to practice law in the Southern District of New York, and in all Courts of the State of New York. I am the principal of The Law Firm of Ravi Batra, P.C., co-counsel for plaintiff Gina Anne Noel Pane in the above entitled action.

2.     I make this Affirmation in Opposition to the untimely Affirmation by counsel for the Town Defendants in support of the Order to Show Cause of co-defendants Muesser, Gramaglia, Pumillo, Fertig, and others not yet identified seeking an Order permitting the defendants to conduct a deposition of Antonio

1

Castro, Esq., plaintiff's co-counsel.

3.  The Town defendants' papers were filed after the deadline imposed by the Court, to wit: February 26, 2008 at 5:00 P.M. Moreover, while categorizing their papers as a "reply," the reality is that these papers independently mimic the relief sought in co-defendants' initial moving papers. These papers proffer a derivative, albeit unavailing, theory to the Court, and were clearly filed in a means designed to prevent the plaintiff from having an opportunity to respond. Simply put, the Town Defendants missed the deadline and now seek to slip the equivalent of moving papers in, while depriving plaintiff of a meaningful opportunity to respond to same. In that light, counsel's assertion that acceptance of their untimely papers "will not prejudice any of the parties to this action" (Murphy Aff. ¶ 2) rings hollow. Under these circumstances, the Town defendants' papers should not be considered; however, in the event the Court chooses to consider them, the following response is provided, with a request that it too be considered. The plaintiff's timely response to the defendants' Order to Show Cause is incorporated herein by reference. At ¶15, *infra*, I proffer a theory of tactical litigation strategy as to why the "disfavored" Castro-deposition is being sought.

4.  Much like the Affirmation submitted in support of the Order to Show

Cause, the Town Defendant's papers are similarly misleading as to facts and law.

5. Initially, much like in the papers submitted in support of the Order to Show Cause, the defendants disingenuously infer that they were not aware of Tony Castro's ongoing involvement in this litigation (Murphy Aff. ¶ 4). While Mr. Murphy concedes that Tony Castro was present for the court conferences in this matter (Id.), he argues that Tony Castro "has made no substantive comments or requests while present in the court" (Id.). Thus, it is essentially counsel's argument that if you do not muddy the record with multiple attorneys for a party speaking in court you do not qualify as counsel for a party. This is baseless.

6. Moreover, the suggestion that Tony Castro not appearing at discovery proceedings is somehow relevant is equally without merit. What a colossal waste of attorney time it would be if each member of a multiple member legal team had to attend each phase of civil litigation. Is Mr. Murphy further suggesting that because Erik Ward was represented at the depositions of the plaintiff's parents by an associate of Mr. Quinn, that suddenly Mr. Quinn was no longer counsel to Mr. Ward?

7. Furthermore, Mr. Murphy was present for the examination of the

plaintiff pursuant to New York General Municipal Law § 50-h, wherein Tony Castro was also present, along with Todd Sherman, Esq., of my firm. Thus, any argument that the defendants were unaware of Tony Castro's status, or that he does not qualify as plaintiff's attorney, is insincere at best.

8. The Town Defendants disingenuously assert that "it is also indisputable that Mr. Castro possesses relevant information concerning his contact with the media and press on behalf of the plaintiff" (Murphy Aff. ¶ 2). Unfortunately, the word "relevant" is thrown about much too liberally. Apart from what was disclosed in Mr. Castro's Affidavit, there is nothing that Mr. Castro could offer that has "any tendency to make the existence of any fact that is <u>of consequence to the determination of the action</u> more probable or less probable than it would be without the evidence" (F.R.E. Rule 401) (<u>emphasis added</u>).

9. Much like Mr. Troetti in his initial moving papers, Mr. Murphy, on behalf of the Town Defendants, similarly seeks to misdirect the Court by asserting that the time that Mr. Catro spent with - or related to - the media, is pertinent. This is simply not the case. Rather, as Mr. Castro's Affidavit makes clear, he was not the source of any of the media reports, and his contact with the media was responsive in nature. Furthermore, as is clear from the depositions already conducted of the plaintiff's parents, as well as the Affidavit of Tony

Castro, there has been not been any payment made to Tony Castro for any time spent on media matters.

 10. That a part of the litigation strategy employed by Mr. Castro, in furtherance of his successful defense of the criminal charges which underlie the instant matter was to educate the public, through the media, about the legality of "domination" <u>is already known to the defendants</u>!  How the plaintiff's legal team developed those (and any other) litigation strategies is wholly protected by the attorney work product privilege, which " protects 'work product of the lawyer' by prohibiting 'unwarranted inquiries into the files and the mental impressions of an attorney,'" and are therefore not subject to disclosure.  <u>Matter of Grand Jury Subpoenas Dated Oct. 22, 1991</u>, 959 F.2d 1158 (2nd Cir. 1992), *quoting*, <u>Hickman v. Taylor</u>, 329 U.S. 495 (1947).

 11. The Town Defendants' argue that "[p]lanning and attending press conferences are normally within the purview of a press agent or media representative and do not involve seeking or providing legal advice" (Murphy Aff. ¶ 3). However, this argument fails on multiple grounds.  Initially, it entirely fails to address the issue of "work product."  Moreover, in New York, attorneys are afforded immunity from defamation claims for statements made related to litigation, including statements to the media.  <u>See</u>  Civil Rights Law § 74; <u>Coyle v.</u>

203 West 102nd Street Apartment Corp., 293 A.D.2d 377 (1st Dept. 2002).

Thus, it is clear that attorneys communicating with the media on behalf of their clients cause is certainly within the purview of legal representation.

    12.    The Town Defendants baselessly argue that because Tony Castro was involved in representing the plaintiff in the related criminal proceedings, that his testimony cannot be "shielded" herein (Murphy Aff. ¶ 4).  This argument is based on a complete misreading of Judge Pauley's decision in Alcon Laboratories, Inc. v. Pharmacia Corp., 225 F.Supp.2d 340 (S.D.N.Y. 2002).  Alcon dealt with the unique issue of patent prosecution - not criminal prosecution.  These are two entirely unrelated types of legal proceedings.  In Alcon, the Court found that Further, a patent "prosecuting attorney's mental impressions are crucial to any claim of inequitable conduct in a patent infringement action."  Alcon, *citing*, Environ Products, Inc. v. Total Containment, Inc., 41 U.S.P.Q.2d 1302 (E.D.Pa.1996).  Thus, Alcon deals with a unique factual and legal situation wholly inapplicable here.

13.     Moreover, in a misguided attempt to overcome the "disfavored" status of attorney depositions, the Town Defendants further argue, without basis, that "[Tony] Castro is not trial counsel in this matter" (Murphy Aff. ¶ 5).  How counsel came to the conclusion that a seasoned litigator with some twenty years of trial experience, like Tony Castro, would not be actively involved in the trial of this matter is beyond belief.

14     The defendants have collectively failed to overcome the "disfavored" status of attorney depositions; have not demonstrated that there is a real need to depose Tony Castro; have not forthrightly considered or reported Tony Castro's critical involvement as plaintiff's counsel in the instant litigation; have not addressed the duplicitous and cumulative nature of the information they purport to seek from Tony Castro as compared to discovery already conducted; and have utterly failed to overcome the strong risk of impinging upon issues of both privilege and work-product.  Under these circumstances, the defendants' Order to Show Cause must be denied in its entirety.

15.     Possible defense's tactical strategy. It occurs to me that maybe, this entire "disfavored" Castro-deposition application was to muddy the waters when I move to depose Andrew Quinn, as I have previously indicated to Andrew Quin, Esq., and the Court given my belief that:

7

   a. Erik Ward was "tipped off" of the 1/31/06 execution of the search warrant issued on 1/30/06 by a local Town Justice, Hon. Doris Friedman, (which search warrant was issued 3 days after Gina Pane filed on 1/27/06 "confidential" complaints with Greenburgh Police Department's internal affairs and Westchester District Attorney's Office), and as a result Ward's computer's CPU, critical for its history of website visits and its IP serial number which would contain impartial and conclusive evidence of any deviant sexual fetishes of Ward[1], was destroyed by Ward (claiming that his relatively new computer was recently thrown away as it was not working properly, however, the photographic evidence taken of Ward's apartment showed the computer setup to be intact, sans the CPU);

   b. If Ward had not gotten Gina Pane to do any of the things she claims he had her do resulting in his obvious sexual satisfaction, Ward or his then criminal defense counsel Andrew Quinn, Esq., need not have waited for the inconclusive DNA results to return months later *before* affirmatively asserting that there will be "no DNA found" in the fecal matter and leaves; the "wait and see" approach employed by Ward and his defense team speaks more to guilt, and perjured false

---

[1]The CPU hard drive and IP address, if containing evidence of Ward's deviant sexual fetishes of the kind described by Gina Pane as to what occurred at the time of the arrest, 1/21/06, or the next day, 1/22/06, deviant sexual demands of Ward culminating in the "woods," would prevent the abuse of the 5th Amendment by Ward and prevent him to falsely assert his denial of his misbehavior despite being under oath.

denials than Ward's innocence, for Ward would know definitively on 1/22/06 if he had ejaculated or not on Gina's required defecation in the Woods. Surely no lab could have discovered Ward's DNA if he had not left any behind in the Woods. Waiting for the lab results before Mr. Quinn asserted many months later that there would be no DNA found is a critical time-line yet to be sufficiently crystalized by our Office, before I seek to depose Mr. Quinn, as I have previously intimated during Court conferences in furtherance of the complaint's allegations, as the "disfavored" bar of counsel-deposition would have been clearly met with false and fabricated denials by Ward's affirmative testimony during his criminal case tried by the same jurist who issued the search warrant in the Town Court building that shares a parking lot with the defendant Greenburgh Police Department's headquarters, and who as a regular feature, take testimony from police officers that honor their badge;

      c. the only party that has not supported the attempt to depose Tony Castro is Ward's legal team, preferring to stay silent; for which I am grateful.

WHEREFORE, it is respectfully requested that the defendants' Order to Show Cause be denied in its entirety.

Dated: New York, New York
      February 29, 2008

> Respectfully submitted,
> THE LAW FIRM OF RAVI BATRA, P.C.
> *Co-Counsel for Plaintiff*
>
> /s/
> Ravi Batra, Esq. (RB 4299)
> Todd B. Sherman, Esq. (TS 4031)
> The Batra Building
> 142 Lexington Avenue
> New York, New York 10016
> (212) 545-1993
> E-Mail: ravibatralaw@aol.com

Antonio D. Castro, Esq.
*Co-Counsel for Plaintiff*
211 South Ridge Street
Rye Brook, NY 10573
(914) 939-0002

To (by ECF and by hand in-court today):

Brian D. Murphy, Esq. (Via ECF)
Stecich Murphy & Lammers, LLP
*Attorneys for defendants Town of Greenburgh and John Kapica*
828 South Broadway, Suite 201
Tarrytown, NY 10591-6650
(914) 674-4100

Thomas J. Troetti, Esq. (Via ECF)
*Attorney for defendants Muesser, Gramaglia,*
*Pumillo, Fertig and John Does 1-10*
305 Old Tarrytown Road
White Plains, NY 10603
(914) 946-1875

Andrew C. Quinn, Esq. (Via ECF)
Quinn & Mellea, L.L.P.
*Attorneys for defendant Erik Ward*
Crosswest Office Center
399 Knolwood Road, Suite 220
White Plains, NY 10603
(914) 997-0555

and

Counsel for Journal News and News12

\pane.696\022908MurphyAffinOp

Docket No.  07 CV 3216 (WP4) (LMS)

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

**GINA ANNE NOEL PANE,**
*Plaintiff*,

- against -

**THE TOWN OF GREENBURGH,
JOHN KAPICA, in his capacity as CHIEF OF THE GREENBURGH
NEW YORK POLICE DEPARTMENT,  ERIK WARD, POLICE OFFICER
MICHAEL MUESSER, SERGEANT ROBERT GRAMAGLIA, SERGEANT
FRANCIS PUMILLO, DETECTIVE PAUL FERTIG,
JOHN DOE POLICE OFFICERS 1 - 10, SO NAMED AS THEIR
IDENTITIES HAVE YET TO BE ESTABLISHED.**
*Defendants*.

**AFFIRMATION IN OPPOSITION TO THE TOWN DEFENDANTS'
UNTIMELY AFFIRMATION IN SUPPORT OF DEFENDANTS' ORDER
TO SHOW CAUSE SEEKING TO DEPOSE PLAINTIFF'S ATTORNEY
ANTONIO CASTRO, ESQ.**

THE LAW FIRM OF RAVI BATRA, P.C.
*Co-Counsel for Plaintiff*
The Batra Building
142 Lexington Avenue
New York, NY 10016
(212)545-1993
\pane.696\022808MurphyAffinOp